[Cite as *Shipman v. Papa John's* , 2014-Ohio-5092.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SHELBY COUNTY

SANDRA K. SHIPMAN,

    PLAINTIFF-APPELLANT,          CASE NO. 17-14-17

    v.

PAPA JOHN'S, ET AL.,           **O P I N I O N**

    DEFENDANTS-APPELLEES.

Appeal from Shelby County Common Pleas Court
Trial Court No. 13CV000117

**Judgment Affirmed**

**Date of Decision: November 17, 2014**

APPEARANCES:

    *Matthew D. Bruder* for Appellant

    *Christopher W. Carrigg* for Appellee, S & D Limited

    *Edward J. Dowd* for Appellee, PJ Ohio LLC dba Papa John's

**SHAW, J.**

{¶1} Plaintiff-appellant Sandra K. Shipman ("Shipman") appeals the May 21, 2014 judgment of the Shelby County Common Pleas Court granting summary judgment in favor of defendant-appellee PJ Ohio LLC dba Papa John's ("Papa John's") and defendant-appellee S&D Limited ("S&D").

{¶2} The facts relevant to this appeal are as follows. On October 12, 2011, Shipman ordered a pizza from Papa John's in Sidney, Ohio. She then drove to the store, parked in the lot, exited her vehicle and walked around the front of the vehicle into the store to pick up her pizza. After getting her pizza, she left the store with the pizza in one hand and her keys in the other and walked toward her vehicle. As Shipman came around her vehicle, she tripped on an uneven area in the concrete in the parking lot and fell. Among her injuries from the fall Shipman sustained a shattered hip, a broken femur, torn tissue and ligaments in her knee and a fractured ankle.

{¶3} On May 30, 2013, Shipman filed a Complaint against Papa John's and S&D alleging negligence.[1] S&D were the owners of the premises where Shipman fell, which had been leased to Papa John's.

---

[1] Shipman's original complaint listed some improper parties who were ultimately correctly identified as Papa John's and S&D as the case proceeded.

{¶4} On August 1, 2013, Papa John's filed its Answer, denying that it was negligent. On August 2, 2013, S&D filed its answer denying negligence, and also asserting a cross-claim against Papa John's, contending that if there was any fault, Papa John's was responsible for parking lot maintenance under the lease agreement.

{¶5} As the case proceeded, multiple depositions were taken, beginning with Shipman. In her deposition, Shipman testified that she arrived at Papa John's at approximately 7:30 or 7:40 p.m. to pick up her pizza, and that it was "dusk" when she arrived. Shipman testified that she did not pull into a designated parking space when she arrived and that she got out of her car and went into the store. Shipman testified that she got her pizza and then walked back into the parking lot toward her vehicle with the pizza in one hand and her keys in the other, but before reaching her vehicle she tripped over some raised concrete and fell. Shipman testified that she did not look down when she was walking; rather she was looking forward at her vehicle. She also testified that after she had fallen, she could clearly observe the raised concrete she had tripped over. Shipman testified that she had only been to the Papa John's to pick up a pizza once previously, some five years before.

{¶6} Ricky Winals, a former employee of Papa John's, was also deposed. Winals testified that he was working as a delivery driver on the evening of

Shipman's fall, but he did not see her fall as he was out on a delivery at the time. Winals testified that he had seen other people trip in the parking lot before, but he had never seen anyone actually fall. Winals testified that the Papa John's employees occasionally mentioned to customers to watch their step if they had tripped on the way into the store.

{¶7} Winals testified that the parking lot's condition with the cracks in the concrete were very obvious to him. In addition, Winals testified that Shipman had been in to pick up a pizza 3-4 times before, but he did not recall when.

{¶8} A man named John Rowland was also deposed. Rowland testified that he had been running with a friend when he tripped and fell in the Papa John's parking lot in 2006. Rowland testified that he had tripped over some raised concrete. Rowland testified that he spoke with an attorney and had his unpaid medical bills ultimately covered, though he was not sure where the money came from.

{¶9} Gertrude Bushman, a claim representative for Auto Owner's Insurance, was also deposed. Bushman testified that her insurance company paid the claim made by John Rowland back in 2006 in the amount of roughly $576 for his unpaid medical bills. Bushman also testified that she investigated Shipman's fall. Bushman testified that she came out to the parking lot to take pictures and measurements of the cracks and deviations in the concrete, but was unsure exactly

where Shipman fell. Bushman testified that she could see open and obvious cracks and deviations in the concrete in the parking lot when she pulled in. Bushman testified that she measured the crack where she thought Shipman fell and determined it was approximately an inch and a half. Bushman testified that the cracks in the lot were open and obvious.

{¶10} Heather Ford, a former District Manager at Papa John's was deposed. Ford testified that she had never received any complaints about Papa John's lot and that any deviations in the concrete of the parking lot were obvious.

{¶11} Lastly, David Jones, the owner of the property was deposed. Jones testified that according to the lease he executed with Papa John's, Papa John's was responsible for maintaining the parking lot and the building. Jones testified that he did not think that the problems in the parking lot were bad, and that the concrete merely had cracks in it.

{¶12} On February 7, 2014, Papa John's filed a motion for summary judgment on Shipman's claims asserting that any problems with the concrete were open and obvious, that the pavement separation was insignificant, trivial and unsubstantial as a matter of law being that it was less than two inches, and that there were no attendant circumstances.

{¶13} On February 7, 2014, S&D filed a motion for summary judgment on Shipman's claims and on its cross-claim against Papa John's. S&D also claimed

that the pavement's conditions were open and obvious, and that any deviations were under two inches and therefore precluded liability for both defendants. S&D also claimed, however, that in the event that liability did exist, under the terms of the agreement between Papa John's and S&D, Papa John's should be held solely liable.

{¶14} On May 1, 2014, Shipman filed her response arguing that the condition of the pavement was not open and obvious. Shipman contended that she did not see the "upheaved" portion of the concrete due to both portions of the concrete being the same color. Shipman also argued that the parking lot was dimly lit, making the condition harder to see. In addition, Shipman argued that the raised concrete was not a "minor imperfection," contending that Bushman only measured one of many deviations in the parking lot and that Rowland had testified in his deposition that some of the deviations were up to four inches.

{¶15} On May 8, 2014, both S&D and Papa John's filed reply memoranda.

{¶16} On May 21, 2014, the trial court filed its Decision and Judgment Entry granting the summary judgment motions of S&D and Papa John's. The trial court reasoned that the concrete deviations in the parking lot were open and obvious and that the attendant circumstances alleged by Shipman, that it was dark outside and the parking lot was dimly lit, did not "relieve Shipman of the responsibility to watch out for herself." Thus the trial court granted the summary

judgment motions against Shipman and dismissed her complaint. In addition, the trial court found that S&D's claims against Papa John's were rendered moot by the disposition.

{¶17} It is from this judgment that Shipman appeals, asserting the following assignment of error for our review.

### ASSIGNMENT OF ERROR
### THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES' MOTION[S] FOR SUMMARY JUDGMENT.

{¶18} In her assignment of error, Shipman argues that the trial court erred in granting the summary judgment motions of Papa John's and S&D. Specifically, Shipman contends that a genuine issue of material fact existed as to whether the condition that caused Shipman's injury was open and obvious, and whether there were attendant circumstances at the time of Shipman's injuries that sufficiently increased the danger of the condition.

*Standard of Review*

{¶19} Appellate review of summary judgments is de novo. *Martin v. Giant Eagle, Inc.*, 10th Dist. Franklin No. 13AP-809, 2014-Ohio-2657, ¶ 15 citing *Titenok v. Wal–Mart Stores E., Inc.,* 10th Dist. Franklin No. 12AP–799, 2013–Ohio–2745, ¶ 6. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable

minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.,* 78 Ohio St.3d 181 (1997).

**{¶20}** Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, syllabus (1988). The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. *See* Civ.R. 56(E).

### 1. Open and Obvious

**{¶21}** In this case, the parties both agree that Shipman was a business invitee and that store owners owe business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc*., 18 Ohio St.3d 203 (1985). However, " '[t]he open-and-obvious doctrine provides that premises owners *do not* owe a duty to persons entering

-8-

those premises regarding dangers that are open and obvious.' " (Emphasis added.) *Pesci v. Miller,* 10th Dist. Franklin No. 10AP–800, 2011–Ohio–6290, ¶ 13 (citation omitted). "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.' " *Hill v. W. Res. Catering, Ltd.,* 8th Dist. Cuyahoga No. 93930, 2010–Ohio–2896, ¶ 9 quoting *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 644, 1992-Ohio-42. "When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims. * * * It is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Hill* at ¶ 10.

{¶22} In general, "[o]pen-and-obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection[.]" *Thompson v. Ohio State Univ. Physicians, Inc.,* 10th Dist. Franklin No. 10AP–612, 2011–Ohio–2270, ¶ 12. However, an individual "does not need to observe the dangerous condition for it to be an 'open-and-obvious' condition under the law; rather, the determinative issue is whether the condition is observable." *Id.* at ¶ 12. Thus, "[e]ven in cases where the plaintiff did not actually notice the condition

until after he or she fell, [courts have] found no duty where the plaintiff could have seen the condition if he or she had looked." *Id.*

{¶23} In this case, when evaluating the open and obvious arguments of the parties the trial court found in its judgment entry that,

> **[t]he evidence is clear that the condition of the parking lot was readily observable. The fact that it was dusk and the parking lot was dimly lit was also a condition readily observable. Additionally, and perhaps most importantly, Shipman traversed the very section of the parking lot going to the building and so had ample opportunity to become aware of the parking lot condition. It was only on her return that she fell. None of the conditions that may have contributed to the fall were hidden or latent.**

(Doc. 185). We agree with the trial court's analysis.

{¶24} While Shipman contends on appeal that the concrete deviations were the same color as the concrete making the deviations difficult to see, the witnesses deposed who spoke to the condition of the parking lot stated that the cracks and deviations in the pavement were readily observable. Bushman and Winals even used the exact term "obvious" when describing how readily observable the deviations were. (Bushman Depo. at 17); (Winals Depo. at 68). In fact, and perhaps most conclusively, Shipman herself testified that after she fell, she looked at the ground and could clearly observe the cracks in the pavement. (Shipman Depo. at 50, 53).

**{¶25}** Moreover, Shipman admittedly had walked into the Papa John's without issue and she admittedly had not been looking at the ground as she walked out, carrying her pizza in one hand and her keys in the other. Shipman testified that as she walked out of the store she was looking ahead at her vehicle. The fact that Shipman was not looking at the pavement does not alter the condition from being open and obvious.

**{¶26}** Shipman has not produced evidence to rebut the testimony presented in the various depositions that the condition of the lot was open and obvious. No witness testified that the cracks or deviations were difficult to see. The fact that the concrete and the deviations were the same color does not prevent the condition from being open and obvious, and it did not, in fact, prevent Shipman from readily noticing the raised concrete when she was actually looking at it. Thus under these facts we agree with the trial court that the evidence was uncontroverted that the pavement's condition was open and obvious. Therefore her argument on this issue is not well-taken.

*2. Attendant Circumstances*

**{¶27}** Shipman next argues that even if the pavement's condition was open and obvious, attendant circumstances existed such that the open and obvious doctrine should not have applied. Specifically, Shipman argued that the parking

lot was dimly lit and that it was dark outside, increasing the danger of the cracked pavement.

{¶28} "An attendant circumstance is any significant distraction that would divert the attention of a reasonable person in the same situation and thereby reduce the amount of care an ordinary person would exercise to avoid an otherwise open and obvious hazard." *Haller v. Meijer, Inc.,* 10th Dist. Franklin No. 11AP–290, 2012-Ohio-670, ¶ 10.

{¶29} To serve as an exception to the open and obvious doctrine, an attendant circumstance must be "so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise." *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-541, 2010-Ohio-2774, ¶ 20 quoting *Cummin v. Image Mart, Inc.,* 10th Dist. No. 03AP-1284, 2004-Ohio-2840, ¶ 10. "[A]ttendant circumstances are facts that significantly enhance the danger of the hazard." *Haller*, *supra*, at ¶ 10. Furthermore, the attendant circumstance must be an " 'unusual circumstance of the property owner's making.' " *Id.,* quoting *McConnell v. Margello,* 10th Dist. No. 06AP–1235, 2007–Ohio–4860, ¶ 17. "Attendant circumstances do not, though, include regularly encountered, ordinary, or common circumstances." *Colville v. Meijer Stores Ltd. Partnership,* 2d Dist. Miami No.2011–CA–011, 2012–Ohio–

2413, ¶ 30, citing *Cooper v. Meijer,* 10th Dist. Franklin No. 07AP–201, 2007–Ohio–6086, ¶ 17.

**{¶30}** In this case, Shipman argues that there were attendant circumstances in that it was dark—or "dusk" as she testified—and the parking lot was dimly lit. We would note that many Ohio courts have recognized that darkness is an open and obvious condition. *See, e.g., McDonald v. Marbella Restaurant,* 8th Dist. Cuyahoga No. 89810, 2008–Ohio–3667, ¶ 33; *Rezac v. Cuyahoga Falls Concerts, Inc.,* 9th Dist. Summit No. 23313, 2007–Ohio–703; *Leonard v. Modene and Assoc., Inc.,* 6th Dist. Wood No. WD–05–085, 2006–Ohio–5471; *Swonger v. Middlefield Village Apts.,* 11th Dist. Geauga No.2003–G–2547, 2005–Ohio–941, ¶ 13; *McCoy v. Kroger Co.,* 10th Dist. Franklin No. 05AP–7, 2005–Ohio–6965, ¶ 16; *Godwin v. Erb*, 167 Ohio App.3d 645, 652, 2006-Ohio-3638 (5th Dist.). *See also Jeswald v. Hutt,* 15 Ohio St.2d 224 (1968), paragraph three of the syllabus ("[d]arkness is always a warning of danger, and for one's own protection it may not be disregarded"). Further, Ohio courts have found that darkness is a naturally occurring event and thus is *not* an attendant circumstance. *Huey v. Neal,* 3d Dist. Allen No 1-02-79, 2003-Ohio-391, ¶ 12; *see also*, *McCoy v. Kroger Co.*, 10th Dist. Franklin No. 05AP-7, 2005-Ohio-6965, ¶ 16. In fact, courts have held that darkness *increases* rather than reduces the degree of care an ordinary person would exercise. *McCoy*, *supra*. Thus based on the caselaw we cannot find that

-13-

the fact that it was "dusk" when Shipman fell was an attendant circumstance in this case circumventing the open and obvious nature of the defects in the pavement.

{¶31} Lastly, Shipman argues that the parking lot was dimly lit, and that the dimly lit parking lot was an attendant circumstance. However, Ohio Courts have found that there is no obligation for a business owner to illuminate the parking area. *Gates v. Speedway Superamerica, L.L.C.,* 8th Dist. Cuyahoga No. 90563, 2008–Ohio–5131, ¶ 18 ("Speedway did not owe [Plaintiff] a duty to adequately light the [parking lot] area[.]); *Scheetz v. Kentwood, Inc.,* 152 Ohio App.3d 20, 11th Dist. Portage No. 2002-P-0043, 2003–Ohio–1209, ¶ 10 ('because appellee had no duty to provide lighting in the restaurant parking lot, it could not have breached any such duty by failing to illuminate its parking lot on the night [plaintiff] fell'); *Meilink v. AAA Northeast Ohio* (Dec. 4, 1998), Lucas App. No. L–98–1139 1998 WL 833570 (no duty to provide adequate lighting even if owner undertakes to provide some light in parking lot); *Collier v. Libations Lounge, L.L.C.*, 8th Dist. Cuyahoga No. 97504, 2012-Ohio-2390, ¶20 ("appellees owed no duty to provide lighting"). Therefore, we cannot find that the dimly lit parking lot was an attendant circumstance. Nevertheless, we would note that the "dimly lit" parking lot did not appear to prevent Shipman from readily observing the cracked pavement once she had fallen and was actually looking at the ground.

Accordingly, Shipman's assignment of error is not-well taken and it is therefore, overruled.

{¶32} For the foregoing reasons Shipman's assignment of error is overruled and the summary judgment of the Shelby County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**