[Cite as *Howard v. Meat City, Inc.*, 2016-Ohio-7989.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

WILLA HOWARD, ET AL.,

    PLAINTIFFS-APPELLANTS,         CASE NO. 1-16-32

    v.

MEAT CITY, INC., ET AL.,           O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV20150459

Judgment Affirmed

Date of Decision: December 5, 2016

APPEARANCES:

    *Michael D. Portnoy* for Appellants

    *Stephen F. Korhn* for Appellees, Meat City, Inc. and Paul G.
        Hahn, Jr., Living Trust

    *Steven A. Keslar* for Appellee, Fritchie Asphalt & Paving Company

**PRESTON, J.**

{¶1} Plaintiffs-appellants, Willa ("Willa") and Mose Howard (collectively, the "Howards"), appeal the June 3, 2016 judgment entry of the Allen County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Meat City, Inc. ("Meat City"), Paul G. Hahn, Jr. Living Trust ("Trust"), and Fritchie Asphalt & Paving Company ("Fritchie"). For the reasons that follow, we affirm.

{¶2} This case stems from injuries Willa sustained when she stepped in a hole in the asphalt and fell in the parking lot of Meat City, a grocery and convenience store in Lima, Ohio. The Howards filed a complaint on July 31, 2015 against Meat City and Fritchie for negligence and loss of consortium.[1] (Doc. No. 1). Fritchie filed its answer on August 18, 2015. (Doc. No. 4). Meat City filed its answer and a cross-claim against Fritchie on August 26, 2015. (Doc. No. 6). Fritchie filed its answer to Meat City's cross-claim on September 10, 2015. (Doc. No. 11). Fritchie filed a motion for summary judgment as to the Howards' claims and Meat City's cross-claim. (Doc. No. 24).

{¶3} On February 29, 2016, the Howards filed an amended complaint,[2] adding the Trust as a party and alleging that the Trust "is the private non business

---

[1] The Howards alleged that Meat City and Fritchie "had a contract * * * whereby Fritchie would maintain Meat City's parking lot on a regular basis and fill in any potholes for the safety of the business invitees of Meat City." (Doc. No. 1 at 2).

[2] The Howards also amended their allegation as to the purported contract between Meat City and Fritchie. They alleged in the amended complaint that Meat City and Fritchie "had a contract * * * whereby Fritchie would provide patchwork to Meat City's parking lots, by filling in any potholes for the safety of the business invitees of Meat City." (Doc. No. 29 at 2).

[sic] owner of the property where Meat City is located." (Doc. Nos. 29, 30, 32). On March 9, 2016, Meat City filed its answer to the amended complaint and a cross-claim against Fritchie. (Doc. No. 34). On March 11 and 21, 2016, Fritchie and the Trust, respectively, filed their answers. (Doc. Nos. 36, 39).

{¶4} On March 15, 2016, Meat City filed a motion for summary judgment on the Howards' claims. (Doc. No. 37). On March 25, 2016, the Trust filed a motion for summary judgment on the Howards' claims. (Doc. No. 41). On May 3, 2016, the Howards filed a memorandum in opposition to Meat City's and Fritchie's motions for summary judgment. (Doc. No. 49). On May 9 and 12, 2016, Meat City and Fritchie, respectively, filed reply memorandums in support of their motions for summary judgment. (Doc. Nos. 54, 56).

{¶5} On June 3, 2016, the trial court filed the judgment entry that is the subject of this appeal, granting summary judgment in favor of the defendants and against the Howards. (Doc. No. 59). In its judgment entry, the trial court concluded that "there is no genuine issue of material fact that the pothole was open and obvious and there were no attendant circumstances." (*Id.* at 8). The trial court dismissed the Howards' amended complaint and Meat City's cross-claim against Fritchie. (*Id.* at 9).

{¶6} On July 1, 2016, the Howards filed their notice of appeal. (Doc. No. 61). They raise two assignments of error, which we will address together.

**Assignment of Error No. I**

**Summary judgment was in error because there are genuine issues of material fact regarding the defendants' breaching their duties owed to appellant.**

**Assignment of Error No. II**

**Defendants are not entitled to judgment as a matter of law regarding the attendant circumstances doctrine and the open and obvious doctrine.**

{¶7} In their first assignment of error, the Howards argue that a genuine issue of material fact exists concerning whether the hole in the parking lot was open and obvious and that the trial court "failed to address the duty of care owed to Mrs. Howard by Fritchie pursuant to the contract between Fritchie and Meat City for parking lot repairs." (Appellant's Brief at 5). In their second assignment of error, the Howards argue that the trial court misapplied the attendant-circumstances doctrine in concluding that no attendant circumstance created a genuine issue of material fact as to whether the hole was open and obvious.

{¶8} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party

Case No. 1-16-32

is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶9}** "'[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom.'" *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 14, quoting *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). "At common law, the legal duty owed by a landowner to one who enters upon his land was contingent upon the status of the entrant: trespasser, licensee, or invitee." *Id.*, citing *Shump v. First Continental-Robinwood Assoc.*, 71 Ohio St.3d 414, 417 (1994). The parties do not dispute the trial court's classification of Willa as a business invitee of Meat City.[3]

**{¶10}** "A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985) and *Jackson v. Kings Island*, 58 Ohio St.2d 357 (1979).

---

[3] "'Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner.'" *Carnes* at ¶ 14, quoting *Neumeier v. Lima*, 3d Dist. Allen No. 1-05-23, 2005-Ohio-5376, ¶ 13, quoting *Light v. Ohio University*, 28 Ohio St.3d 66, 68 (1986).

"However, this duty does not require landowners to insure the safety of invitees on their property." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, ¶ 11. "[T]he open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5. "The 'open and obvious' doctrine states that an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious dangers on the property." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992).

{¶11} "In general, '[o]pen-and-obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection[.]'" *Shipman v. Papa John's*, 3d Dist. Shelby No. 17-14-17, 2014-Ohio-5092, ¶ 22, quoting *Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. Franklin No. 10AP-612, 2011-Ohio-2270, ¶ 12. "However, an individual 'does not need to observe the dangerous condition for it to be an "open-and-obvious" condition under the law; rather, the determinative issue is whether the condition is observable.'" *Id.*, quoting *Thompson* at ¶ 12. "Thus, '[e]ven in cases where the plaintiff did not actually notice the condition until after he or she fell, [courts have] found no duty where the plaintiff could have seen the condition if he or she had looked.'" *Id.*, quoting *Thompson* at ¶ 12.

{¶12} "In most situations, whether a danger is open and obvious presents a question of law." *Carnes*, 2011-Ohio-4467, at ¶ 16, citing *Lang v. Holly Hill Motel*,

4th Dist. Jackson No. 06CA18, 2007-Ohio-3898, ¶ 23, citing *Hallowell v. Athens*, 4th Dist. Athens No. 03CA29, 2004-Ohio-4257, ¶ 21 and *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 2005-Ohio-2098, ¶ 28 (6th Dist.). "There may, however, be situations where disputed facts may exist regarding the openness and obviousness of a hazard, possibly creating an issue of material fact." *Id.*, citing *Ray v. Wal-Mart Stores, Inc.*, 4th Dist. No. 08CA41, 2009-Ohio-4542, ¶ 29 and *Lang* at ¶ 23. For example, the existence of "attendant circumstances" may create an issue of material fact. *Id.*

{¶13} "Attendant circumstances may exist which distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger." *Id.* at ¶ 17, citing *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006 AP 09 0054, 2008-Ohio-105, ¶ 26, citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 499 (1st Dist.1996). "An attendant circumstance is usually an active event as opposed to a static condition." *Id.* This court recognized that an "attendant circumstance" is defined as:

"a factor that contributes to the fall and is beyond the control of the injured party. * * * The phrase refers to all facts relating to the event, such as time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event. * * * However, '[b]oth circumstances

-7-

contributing to and those reducing the risk of the defect must be considered.'"

*Williams v. Lowe's of Bellefontaine*, 3d Dist. Logan No. 8-06-25, 2007-Ohio-2045, ¶ 18, quoting *Benton v. Cracker Barrel Old Country Store, Inc.*, 10th Dist. Franklin No. 02AP1211, 2003-Ohio-2890, ¶ 17, quoting *Sack v. Skyline Chili, Inc.*, 12th Dist. Warren No. CA2002-09-101, 2003-Ohio-2226, ¶ 20.

**{¶14}** "To serve as an exception to the open and obvious doctrine, an attendant circumstance must be 'so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise.'" *Shipman*, 2014-Ohio-5092, at ¶ 29, quoting *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-541, 2010-Ohio-2774, ¶ 20. "'[A]ttendant circumstances are facts that significantly enhance the danger of the hazard.'" *Id.*, quoting *Haller v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10. "Furthermore, the attendant circumstance must be an "'unusual circumstance of the property owner's making.'"" *Id.*, quoting *Haller* at ¶ 10, quoting *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 17. "'Attendant circumstances do not, though, include regularly encountered, ordinary, or common circumstances.'" *Id.*, quoting *Colville v. Meijer Stores Ltd. Partnership*, 2d Dist. Miami No. 2011-CA-011, 2012-Ohio-2413, ¶ 30.

**{¶15}** We will first address whether the hazard in this case was open and obvious. Then we will address the Howards' attendant-circumstances argument. Finally, we will address whether Fritchie owed a duty of care to Willa. Construing the evidence in a light most favorable to the Howards, we first conclude that the open-and-obvious doctrine obviated any duty owed to Willa. There is no genuine issue of material fact that the hole[4] in the parking lot in this case was so obvious and apparent to Meat City's business invitees that they were reasonably expected to discover it and protect themselves against it. Willa testified in her deposition that she frequented Meat City an average of two to three times a week over the two years up to the date that she fell. (Doc. No. 26, Willa Howard Deposition ("Willa Depo."), at 17, 27). In her visits to Meat City, she noticed "holes" and "potholes" in the parking lot.[5] (*Id.* at 29-30). When Willa noticed the holes and potholes in the parking lot, she went around them or did not step in them. (*Id.* at 30-31).

**{¶16}** On the day Willa fell in the Meat City parking lot—May 26, 2015—the weather conditions were clear and sunny. (*Id.* at 14-16). She could see the parking lot in front of her as she pulled up to the parking space in the southern portion of the east parking lot—about three spaces north from the sidewalk running

---

[4] The parties refer to the blemish in the asphalt as a "hole," "pothole," and "depression." The label we place on the blemish is not dispositive to this case. For purposes of this opinion, we will refer to the blemish as a "hole."

[5] Matthew Hahn, president and general manager of Meat City, averred in an affidavit that the Trust is the owner/lessor of the premises, including the business building and the parking lots, at which Meat City is located. (Doc. No. 37, Ex. A, Matthew Hahn Affidavit, ¶ 3). Meat City occupies and controls the premises pursuant to an oral lease. (*Id.*).

along Kibby Street. (*Id.* at 24-25, 107, Defendant's Exhibit A). (*See also* Doc. No. 37, Ex. A, Matthew Hahn Affidavit, ¶ 7, 9 (noting that the area where Willa claims to have fallen is the "southeast" parking lot)). Willa did not notice any of the holes in the parking lot near her car when she parked and walked into the store. (Willa Depo. at 35-36, 107). Willa was in Meat City for 10 or 15 minutes buying candy and perhaps playing the lottery. (*Id.* at 36). When she exited Meat City, she had in her hands her purse and a bag containing her candy purchase. (*Id.* at 38-39). She was "rushing" as she walked back to her vehicle. (*Id.*). There was a vehicle parked near her vehicle, but there "was quite a bit of space" between her vehicle and that vehicle, and the other vehicle did not distract her in any way. (*Id.* at 42).

**{¶17}** As she was about to open the driver door of her vehicle, but before she opened it, she tripped in a "hole" in the parking lot that "was partially under the car and then partially outside of not under the car." (*Id.* at 43-44, 46-47, 51, 118). Willa's right "foot got caught in the hole," and she fell. (*Id.* at 48-49). There was nothing unusual or out of the ordinary going on in the parking lot when she fell, nor were there any "artificial type of distractions" drawing her attention away from her vehicle. (*Id.* at 42, 59). She did not see the hole when she exited her vehicle to go into the store or when she walked back to her vehicle. (*Id.* at 44). The hole "apparently was under [her] door when [she] got out" of her vehicle, and "[t]hat's

why [she] didn't see it" "[w]hen [she] opened [her] door to get out to go in" to Meat City. (*Id.* at 114).

**{¶18}** When asked if she could describe the hole, Willa testified in her deposition, "I wasn't looking to see what the hole looked like that I fell in; but, you know, I saw the hole." (*Id.* at 49-50). Willa testified that the hole was about six inches wide and "[not] that deep either"—"[m]aybe 3 inches," although she was not sure. (*Id.* at 50-56). During her deposition, Willa drew the size of the hole on a piece of paper, marked as Defendant's Exhibit B, and the drawing reveals that the hole was slightly less long that it was wide. (*Id.* at 50-56, Defendant's Ex. B). Counsel for Meat City and the Trust asked Willa whether she could have seen the hole had she been looking:

> [Counsel]: Is it fair to say that if you had been looking in the direction of where the hole was that you could have seen that part of the hole that wasn't under the car?
>
> [Willa]: Well, yeah, I imagine if I had have been looking; but being that I didn't see it when I went in there, I mean, you know, I wasn't expecting, you know, because I didn't fall going in so I wasn't expecting to fall coming out. * * * I didn't see a hole when I was going in, so I wasn't expecting it to be there when I came out.

[Counsel]: You've already told me that you were aware from, you know, in the six months before the day that you fell, you were aware of some other holes, some of which were more than 2 to 3 inches deep in the east parking lot.

[Willa]: Yeah. As a matter of fact, everyone knew that Meat City's parking lot was full of holes. I mean, you know, I've heard people talk about that.

[Counsel]: In the six months before, which we've talked about that time frame, about how many of these holes do you think there were in the east parking lot?

[Willa]: I don't know. I don't know.

[Counsel]: But there were many?

[Willa]: I can't say that.

[Counsel]: Okay.

[Willa]: I mean, you know, but I know coming up to the time of my fall, I knew that there was some pretty bad potholes out there. It's hard for me to say how many.

(*Id.* at 57-58). Counsel for Fritchie also asked Willa whether she could have seen the hole had she looked at the ground, and Willa responded, "If I had looked down on the ground, probably." (*Id.* at 123). After Willa fell, she got in her vehicle and

went to Sam's Club, although she "was in a lot of pain and somewhat disoriented too." (*Id.* at 59-60).

**{¶19}** Based on Willa's testimony, there is no genuine issue of material fact that the hole that caused her to fall was an open-and-obvious danger—that is, the hole was observable and was *not* hidden, concealed from view, or undiscoverable. *See Shipman*, 2014-Ohio-5092, at ¶ 22. Willa testified in her deposition that she saw the hole after she fell. (*Id.* at 49-50). *See Shipman* at ¶ 24 ("[P]erhaps most conclusively, Shipman herself testified that after she fell, she looked at the ground and could clearly observe the cracks in the pavement."). What is more, by Willa's own admission in response to questions from the defendants' counsel during her deposition, she could have seen the hole had she looked. (Willa Depo. at 57-58, 123). *See Shipman* at ¶ 22. In fact, according to Willa, "everyone knew that Meat City's parking lot was full of holes." (Willa Depo. at 57). "The fact that [Willa] was not looking at the pavement does not alter the condition from being open and obvious." *Shipman* at ¶ 25. *See also Williams*, 2007-Ohio-2045, at ¶ 16 ("[D]ue to the open and obvious nature of the hazard, [the plaintiff] was *able* to avoid the hazard to protect herself, even if she did not do so." (Emphasis sic.)). For these reasons, there is no genuine issue of material fact that the hole was an open and obvious condition.

**{¶20}** We next address whether the existence of an "attendant circumstance" bars application of the open-and-obvious doctrine. Specifically, the Howards argue that "the existence of a pothole in the parking lot that was unobservable due to an open car door was beyond [Willa's] control and within the control of Defendants who had a duty to maintain the parking lot and warn of any non-open and obvious conditions." (Appellants' Brief at 8). In other words, the Howards argue, Willa's vehicle obstructing the hole was an attendant circumstance that bars application of the open-and-obvious doctrine. The Howards are incorrect.

**{¶21}** First, an attendant circumstance must be of the property owner's making and beyond the control of the injured party. *See Shipman* at ¶ 29. Here, the circumstance—Willa's vehicle in the parking lot—was created by Willa, not the defendants. Indeed, it was Willa—not the defendants—who had control of her vehicle when she entered the Meat City parking lot. Second, even setting aside that the circumstance was within Willa's control, to be an attendant circumstance, the circumstance must be unusual. *Id.* There is nothing unusual about vehicles entering and parking on a parking lot of a grocery and convenience store. For these reasons, as a matter of law, no attendant circumstance bars the application of the open-and-obvious doctrine.

**{¶22}** Finally, we address the Howards' argument that Fritchie owed a duty of care to Willa "pursuant to the contract between Fritchie and Meat City for parking

lot repairs." (Appellants' Brief at 5). The Howards argue that Fritchie "assumed the duty to keep the parking lot in repair" and that Fritchie's "nonperformance of the duty" created the dangerous condition—namely, the hole on which Willa tripped. (*Id.* at 6). According to Matthew Hahn ("Matthew"), the president and general manager of Meat City, he orders repairs to Meat City's parking lots "[j]ust when needed," based on his personal observations of the parking lots. (Doc. No. 27, Matthew Hahn Depo. ("Hahn Depo."), at 18, 66-67). Meat City contracted with Fritchie approximately a week before Willa's fall to repair potholes on the west parking lot at Meat City—not the southeast parking lot where Willa fell. (*Id.* at 13, 15-17). On May 26, 2015—the day of Willa's fall—Fritchie made those repairs to the west parking lot. (*Id.* at 13, 18-20, 54). Also that day, while Fritchie was at Meat City, Matthew requested that Fritchie patch a pothole in the northeast parking lot—again, not where Willa fell. (*Id.*). At that time, Matthew did not request additional repairs to any other areas of the parking lots. (*Id.* at 20). *After* Willa fell, Matthew called Fritchie to request that it repair the area of the parking lot where he believed Willa fell. (*Id.* at 22-23). There was no written contract between Meat City and Fritchie for the parking-lot repairs. (*Id.* at 32-33).

{¶23} We conclude that Fritchie owed no duty of care to Willa. "Under the law of negligence, a defendant's duty to plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's

position." *See Burth v. CPK Constr., Inc.*, 9th Dist. Summit No. 22713, 2006-Ohio-70, ¶ 11, citing *Huston v. Konieczny*, 52 Ohio St.3d 214, 217 (1990). "Injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone." *Id.*, citing *Huston* at 217. Here, the record is devoid of any evidence that Fritchie should have foreseen any injury to Willa. Even assuming a contract between Meat City and Fritchie for repair of the parking lots could create a duty on the part of Fritchie to Meat City's customers, there is no evidence that Meat City hired Fritchie to repair the parking lot where Willa fell. Therefore, there was no reason for Fritchie to foresee Willa's alleged injuries. *See Burth* at ¶ 13 (concluding that there was no reason for contractors performing work at a residence to foresee injury to a building inspector who fell from a ladder at the residence because the contractors "were not aware, nor should they have been, that use of the ladder would result in harm to [the building inspector]").

{¶24} Even assuming Fritchie owed Willa a duty of care, to the extent the Howards argue that Fritchie cannot benefit from application of the open-and-obvious doctrine, we reject that argument. Generally, "an independent contractor *who creates* a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property." (Emphasis added.) *Simmers*, 64 Ohio St.3d at 645. However, when there is no

evidence that the independent contractor created the dangerous condition, the open-and-obvious doctrine may apply. *See Szarka v. Mt. Sinai Med. Ctr.*, 8th Dist. Cuyahoga No. 72058, 1997 WL 781733, *3 (Dec. 18, 1997) ("Because Szarka presented no evidence that Company created the hazardous condition, the 'open and obvious' rule applies to relieve Company of liability for her injuries."), citing *Krause v. G & C Properties*, 8th Dist. Cuyahoga No. 66379, 1994 WL 613769, *3 (Nov. 3, 1994) ("When the independent contractor did not create the condition, *Simmers* does not apply and the independent contractor is entitled to the same immunities as the owner or occupier."), citing *Rinehart v. Fed. Natl. Mtge. Assn.*, 91 Ohio App.3d 222, 231 (2d Dist.1993). Here, there is no evidence in the record that Fritchie created the hazard, whether by act or omission. *See Szarka* at *3. Therefore, even assuming Fritchie owed Willa a duty of care as an independent contractor, the open-and-obvious doctrine can properly be applied to shield it from liability.

{¶25} We hold that the trial court did not err in granting summary judgment in favor of the defendants and against the Howards. For the reasons discussed above, the trial court properly granted summary judgment as to the Howards' negligence claim against the defendants. Because summary judgment was proper as to the negligence claim, summary judgment was also proper as to the derivative

loss-of-consortium claim. *See Kenney v. Ables*, 5th Dist. Licking No. 15-CA-68, 2016-Ohio-2714, ¶ 20. The Howards' assignments of error are overruled.

{¶26} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**