[Cite as *Warner v. Allen Metro. Hous. Auth.*, 2024-Ohio-5363.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

DIANNA L. WARNER,

        CASE NO. 1-24-33

    PLAINTIFF-APPELLANT,

v.

ALLEN METROPOLITAN
HOUSING AUTHORITY,

        O P I N I O N

    DEFENDANT-APPELLEE.

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV 2022 0164**

**Judgment Affirmed**

**Date of Decision: November 12, 2024**

**APPEARANCES:**

    *J. Grant Neal* **for Appellant**

    *Dalton J. Smith* **for Appellee**

**WALDICK, J.**

{¶1} Plaintiff-appellant, Dianna Warner ("Warner"), brings this appeal from the March 12, 2024, judgment of the Allen County Common Pleas Court granting summary judgment in favor of defendant-appellee Allen Metropolitan Housing Authority ("AMHA"). On appeal, Warner argues that the trial court erred by determining that there were no genuine issues of material fact with regard to her claims for negligence and negligence per se. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} Warner has lived in the Furl Williams Apartments in Allen County since 2014. The apartments are owned by AMHA.

{¶3} At approximately 8:30 p.m. on November 17, 2021, after it was already dark outside, Warner was taking her trash out to the dumpster. She walked out of the front door of her building, down the sidewalk and crossed approximately fifty feet to the dumpster that residents used to deposit their trash. There was a couch sitting on the concrete pad beside the dumpster, which had been there for two or three weeks. In addition, the lighting near the dumpster was inoperable, resulting in what Warner called "pitch black" conditions.

{¶4} On her way to the dumpster, Warner did not use any source of illumination. She stepped sideways around the couch and put her trash down on the ground to open the sliding door to the dumpster. When she went to retrieve her trash and throw it into the open door of the dumpster, she stepped backward onto a headboard that she had not seen and then fell backwards, resulting in serious injuries.

{¶5} On May 2, 2022, Warner filed a complaint against AMHA alleging negligence and negligence per se. More specifically, Warner claimed that AMHA had a duty to fix and/or replace lighting in the area of the dumpster, and that it had a duty to remove all trash. Warner also alleged that AMHA was in violation of the Landlord Tenant Act codified in R.C. 5321 by failing to keep common areas in a safe and sanitary condition. Warner claimed that AMHA's negligence caused her "severe and substantial physical injuries" resulting in damages in excess of $25,000. (Doc. No. 1).

{¶6} On May 13, 2022, AMHA filed an answer admitting that it owned the subject property, but denying that it was negligent. AMHA asserted numerous affirmative defenses including, *inter alia*, that AMHA was entitled to sovereign immunity, that Warner's injuries were the result of her voluntary exposure to an open and obvious hazard, that Warner did not exercise ordinary care when moving in the dark precluding recovery under the "step-in-the-dark rule," and that AMHA had no notice of any alleged defective condition or hazard on the premises.

{¶7} The case proceeded to discovery with depositions being taken of Warner and John Brewster, the "Maintenance Manager" for AMHA. In his deposition, Brewster testified that he was never notified of a lighting issue near the dumpster prior to Warner's fall. After Warner fell, she personally notified AMHA and Brewster went out to inspect the area. He discovered that of the two light fixtures near the dumpster, one was missing a light bulb and the other had a loose light bulb that just needed tightened. Brewster testified that the last time he received a complaint regarding lighting at the Furl Williams Apartments, it was for lighting in the parking lot, an issue he remedied by removing a tree that was blocking the lighting.

{¶8} Brewster also provided testimony regarding trash near the dumpster, stating that he had received complaints in the past about trash accumulation at the subject property, and when he did he would send other employees to go pick the trash up. Generally, however, Brewster testified that the trash was handled by "Rumpke."

{¶9} In Warner's deposition, she testified that she does not accumulate much trash and usually only has a "grocery bag" to take out every 3 or 4 days. She testified that she did not even always use the dumpster; rather, she testified that she used a smaller garbage can that was on the premises.

{¶10} Warner testified that most of the time she was taking her trash out during the daytime. She testified she was not aware of whether the lights were functioning by the dumpster. On the night in question, Warner testified that she was taking care of a young boy and had to change his diaper. She wanted to take the diaper out to the dumpster, so she went outside when it was dark.

{¶11} Warner testified that as she approached the dumpster on the night in question she could see the couch near it "from the lighting that's on the front of the building on the second story." (Warner Depo. Tr. at 15). She testified that the lighting was good enough "to walk over there and pull the door open." (*Id*. at 56). However, she maintained that it was otherwise "pitch black," and she could not see the headboard she tripped over. The day after the incident, Warner took a picture of the headboard on the ground near the dumpster, and it is readily visible.

{¶12} On July 31, 2023, AMHA filed a motion for summary judgment, arguing that Warner's claims were barred by the open-and-obvious doctrine and "the-step-in-the-dark rule." AMHA also argued that Warner had failed to show AMHA breached a duty, and that AMHA was entitled to sovereign immunity. (Doc. No. 29).

{¶13} On September 11, 2023, Warner filed a response, arguing that the step-in-the-dark rule and open and obvious doctrine did not apply in this instance. Further, Warner argued that AMHA was not immune. Attached to the response were

documents showing emails and messages Warner had sent to AMHA *after* the incident where she notified AMHA of poor lighting and trash accumulation.

{¶14} On March 12, 2024, the trial court filed a final entry granting AMHA's motion for summary judgment and dismissing Warner's complaint. Although the trial court determined that there was a genuine issue of material fact as to AMHA's immunity claim, the trial court ultimately determined that AMHA was entitled to summary judgment on Warner's claims for negligence and negligence per se.[1] As a result, Warner's complaint was dismissed. Warner now appeals the trial court's judgment, asserting the following assignments of error for our review.

### First Assignment of Error

**The trial court erred by granting Appellee's motion for summary judgment and dismissing Appellant's negligence claim because whether Appellant's actions constituted ordinary care is a question of fact, not a question of law.**

### Second Assignment of Error

**The trial court erred by granting Appellee's motion for summary judgment on Appellant's negligence per se claim because the trial court only considered whether Appellee had actual notice of defective conditions around its dumpster and did not address whether Appellee had constructive notice of such conditions.**

---

[1] AMHA did not file a cross-appeal, thus we have no cause to review the trial court's findings regarding sovereign immunity.

*Standard of Review*

**{¶15}** Both of Warner's assignments of error challenge the trial court's determination to grant summary judgment in favor of AMHA.. The Supreme Court of Ohio has held that summary judgment may be granted when "'(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" *M.H. v. Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). We review a trial court's decision to grant a summary judgment motion de novo. *Harris v. Hilderbrand*, 2023-Ohio-3005, ¶ 23

*First Assignment of Error*

**{¶16}** In her first assignment of error, Warner argues that the trial court erred by granting AMHA summary judgment on her common law negligence claim. Specifically, Warner argues that the trial court erred by finding that her claim was barred by the "step-in-the-dark" rule.

Analysis

**{¶17}** In order to establish negligence, a party "must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother*

*v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). "However, under the common law theory [of negligence], the open and obvious doctrine would apply and defeat a negligence claim." *Rader v. RLJ Mgt. Co.*, 2024-Ohio-391, ¶ 16 (3d Dist.).

{¶18} "In general, '[o]pen-and-obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection.' " *Shipman v. Papa John's*, 2014-Ohio-5092, ¶ 22 (3d Dist.), quoting *Thompson v. Ohio State Univ. Physicians, Inc.*, 2011-Ohio-2270, ¶ 12 (10th Dist.). "However, an individual 'does not need to observe the dangerous condition for it to be an "open-and-obvious" condition under the law; rather, the determinative issue is whether the condition is observable.' " *Id.*, quoting *Thompson* at ¶ 12. "Thus, '[e]ven in cases where the plaintiff did not actually notice the condition until after he or she fell, [courts have] found no duty where the plaintiff could have seen the condition if he or she had looked.' " *Id.*, quoting *Thompson* at ¶ 12. The rationale underlying the doctrine is that the open and obvious nature of the hazard itself serves as a warning. *Williams v. Lowe's of Bellefontaine*, 2007-Ohio-2045, ¶ 9. In most situations, whether a danger is open and obvious presents a question of law. *Coldren v. Northview Shopping Plaza, LLC*, 2023-Ohio-1703, ¶ 20 (3d Dist.).

{¶19} Nevertheless, even if a danger is open and obvious, "[t]he presence of attendant circumstances . . . may create a genuine issue of fact as to whether a danger is open and obvious." *Lyle v. Pk Mgt, LLC*, 2010-Ohio-2161, ¶ 28 (3d.Dist). An "attendant circumstance" is a factor that contributes to a fall that is beyond the

control of the injured party. *Id*. The phrase refers to all facts relating to the event, including time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event. *Id*. Importantly, to serve as an exception to the open and obvious doctrine, an attendant circumstance must be so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care of an ordinary person. *Coldren v. Northview Shopping Plaza, LLC*, 2014-Ohio-5092, ¶ 30 (3d Dist.).

{¶20} In this case, the trial court determined that the headboard Warner fell over was "lying in the open near the dumpster and could readily have been viewed by anyone during the daytime hours." (Doc. No. 39). The trial court thus determined that the headboard was an open and obvious danger; however, the trial court did not end its analysis there. The trial court proceeded to determine whether the area around the dumpster being "pitch black" constituted an attendant circumstance such that a genuine issue of material fact existed as to whether the headboard was an open and obvious danger.

{¶21} The trial court analyzed the legal authority that addressed whether darkness was an attendant circumstance. "Generally, darkness itself is an open-and-obvious condition, not an attendant circumstance, which should increase, not decrease, the care that a reasonable person takes for their own safety." *Lambert v. Up Cincinnati Race, LLC*, 2022-Ohio-4699, ¶ 24 (1st Dist.). "If one does unreasonably disregard the darkness, she may be precluded from recovering

damages for resulting injuries." *Tomasko v. Sohnly*, 2016-Ohio-2698, ¶ 29 (5th Dist.). This theory is encapsulated in the "step-in-the-dark rule," which states: "one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is guilty of contributory negligence as a matter of law." *Posin v. A.B.C. Motor Court Hotel, Inc.,* 45 Ohio St.2d 271, 276 (1976).

**{¶22}** When analyzing the evidence presented related to Warner "stepping in the dark," the trial court determined that:

> In this case no one suggested to Warner that she journey *outside* to the dumpster in the darkness. Warner knew there was little to no lighting by the dumpster and that often times various items, including pieces of furniture, were left by the dumpster and not taken away promptly. Warner chose to squeeze past the couch into the pitch black without a flashlight or any sort of other source of illumination. In so doing, she entered a dark condition at her own peril and is precluded from recovering damages under the common law theory of negligence.

(*Id.*)

**{¶23}** Warner argues that the trial court erred by finding that the darkness in this instance did not constitute an attendant circumstance such that a genuine issue of material fact existed as to whether the headboard was an open and obvious danger. She argues that the trial court never considered whether she was exercising ordinary care when she "stepped in the dark." We disagree.

{¶24} The trial court's thoroughly researched and well-reasoned judgment entry describes the undisputed facts that were key to its decision. Warner knew it was dark outside and that the area around the dumpster was "pitch black." She also knew that there was, at least, a couch by the dumpster that had been there for some time. Despite knowing that it was "pitch black" outside, and despite knowing that there were objects around the dumpster, Warner walked to the dumpster without any type of illumination.

{¶25} By her own admission, Warner squeezed past the couch, set her trash down, opened the dumpster, then stepped onto a darkened area that happened to contain a headboard. Photographs show that the headboard would have been readily visible in any kind of illumination had Warner been exercising ordinary care. These were all factors noted by the trial court. Thus, trial court's analysis *does* address whether Warner was exercising ordinary care regarding her encounter with the darkness, therefore her argument is inaccurate.

{¶26} Nevertheless, Warner maintains that the holding from cases such as *Hissong v. Miller*, 2010-Ohio-961, (2d Dist.), preclude summary judgment in this instance. In *Hissong*, the Second District Court of Appeals determined that a plaintiff's potential negligence by "stepping in the dark" could not be answered as a matter of law, but the facts of that case are entirely distinguishable from the case *sub judice*.

**{¶27}** In *Hissong*, the plaintiff was at a business and asked to use the restroom. An employee directed the plaintiff to the back of the building, "through the curtains to the left of the trellis in the back." *Id*. at ¶ 2. The plaintiff had never been in the establishment before. She "saw the trellis near the back on the left, and just before the trellis began, she saw the face of a closed door. Believing this was the restroom 'to the left of the trellis,'" the plaintiff walked over to it. *Id*. The plaintiff opened the door "about a foot and a half." (*Id*.)

> The other side was dark, but enough light from the backroom shone inside for Hissong to see a light switch on the right wall. As she reached for the switch, Hissong at the same time stepped through the doorway—never looking down. Had she looked down, she would have seen the steps that descended immediately on the other side of the door's threshold. As it was, expecting her foot to find the solid restroom floor and not finding it, Hissong bounced down the steps, severely injuring her shoulder on the way.

(*Id*.)

**{¶28}** The facts of *Hissong* are readily distinguishable from the case *sub judice*. The plaintiff in *Hissong* was following someone else's directions to a bathroom in a building *she did not know*, and there was no mention to her of any stairs. Furthermore, *Hissong* is not binding on us.

**{¶29}** Regardless of the fact that *Hissong* is only persuasive authority, the trial court effectively distinguished *Hissong* in its analysis by noting that in this case Warner was stepping *outside* into darkness of her own free will to an area she was generally familiar with and that she already knew was cluttered.

-12-

**{¶30}** Under these specific facts and circumstances, we agree with the trial court that there is no genuine issue of material fact with regard to Warner's common law negligence claim. The danger was open and obvious and the evidence did not show that darkness was an attendant circumstance here. Therefore, her first assignment of error is overruled.

*Second Assignment of Error*

**{¶31}** In her second assignment of error, Warner argues that even if her common law negligence claim failed, her claim of negligence per se should have survived summary judgment. Unlike her claim for common law negligence, Warner's negligence per se claim is based on her allegation that AMHA was in violation of the Landlord-Tenant Act, codified in R.C. 5321.01, et seq.

Analysis

**{¶32}** Revised Code 5321.12 provides that any party may recover damages for the breach of contract or breach of any duty that is imposed by law. Generally, a violation of a landlord's statutory duties under R.C. 5321.04 constitutes negligence per se, meaning that proof of a statutory violation relieves a plaintiff's burden of proving the existence of a duty and a breach of that duty. *Morgan v. Mamone*, 2006-Ohio-6944, ¶ 19 (8th Dist).

**{¶33}** Here, the trial court analyzed the evidence and determined that AMHA had a duty to keep the dumpster area in a safe and sanitary condition pursuant to

R.C. 5321.04(A)(3). The trial court then determined that whether AMHA violated R.C. 5321.04(A)(3) by failing to provide adequate lighting near the dumpster and/or leaving furniture near the dumpster was a question of fact to be resolved by a jury.[2]

**{¶34}** However, the trial court noted that even assuming that AMHA breached its duty under R.C. 5321.04(A)(3) by not keeping the dumpster area in a safe condition, this only satisfied the first two elements of negligence recovery. Warner still had to prove that the conditions were the proximate cause of her injury.

**{¶35}** The Supreme Court of Ohio has held that a finding of negligence per se does not necessarily result in liability:

> proximate cause for the injuries sustained [still must be] must be established. [internal quotation omitted] Further, a plaintiff tenant would also have to show that "the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord." [Internal citation omitted].

*Mann v. Northgate Investors, L.L.C.*, 2014-Ohio-455, ¶ 12.

**{¶36}** Here, the trial court analyzed the evidence and determined that there was no evidence that AMHA received actual notice that the lights in the area of the dumpster were not in working order. The record supports the trial court's finding on

---

[2] Again, although the trial court's finding on this issue was adverse to AMHA, there was no cross-appeal filed by AMHA, so we will not address whether the trial court was correct in its analysis of R.C. 5321.04(A)(3).

this issue as there is no evidence whatsoever that AMHA received actual notice about the lighting until after Warner's injury.

**{¶37}** Warner argues that although AMHA did not have actual notice of the lighting and the headboard, AMHA should have had constructive notice of the issues because they were ongoing. However, as the trial court stated, there is absolutely no evidence of how long the headboard Warner tripped over was present near the dumpster, and there is no evidence as to how long the lights near the dumpster were not in working order. *Ray v. Wal-Mart Storex, Inc.*, 2013-Ohio-2684, ¶ 47 (4th Dist.) (holding that to show a premises owner possessed constructive knowledge of a hazard, evidence of how long the condition existed is *mandatory*). There is simply no evidence that AMHA knew or should have known about the specific conditions. For example, Warner herself did not know how long the lights had been out, and Warner produced no affidavits from other tenants regarding the lights.

**{¶38}** Warner seems to invite speculation that AMHA should have known of the lighting issues, but this is not sufficient to defeat summary judgment. *Durnell's RV Sales Inc. v. Beckler*, 2023-Ohio-3565, ¶ 92 (3d.Dist.) (holding that resting on mere allegations against a motion for summary judgment is insufficient). As the only evidence in the record establishes that AMHA did not know of the lighting conditions, and there is not any evidence that AMHA should be imputed constructive knowledge, we find that the trial court correctly awarded summary

judgment in favor of AMHA. Therefore, Warner's second assignment of error is overruled.

*Conclusion*

**{¶39}** Having found no error prejudicial to Warner in the particulars assigned and argued, her assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlm**