[Cite as *Miller v. Moyer*, 2017-Ohio-7106.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Blair Miller, et al.                                    Court of Appeals No. S-16-033

      Appellants                               Trial Court No. 14 CV 1080

v.

Jeff Moyer, et al.                                     **DECISION AND JUDGMENT**

      Appellees                                Decided:  August 4, 2017

* * * * *

Andrew R. Mayle, Jeremiah S. Ray and Ronald J. Mayle, for
appellants.

Geoffrey A. Belzer, for appellees.

* * * * *

**McCORMACK, J.**

{¶ 1} Plaintiffs-appellants Blair and Ellen Miller appeal the judgment of the Sandusky County Court of Common Pleas granting summary judgment in favor of defendants-appellees Jeff Moyer; Directsat, USA, L.L.C.; and DirecTV.  For the reasons that follow, we affirm.

## Substantive Facts and Procedural History

{¶ 2} On or about February 8, 2013, the Millers purchased a satellite dish and satellite dish service from DirecTV. DirecTV, through its agent, Directsat, arranged for Directsat employee, Jeff Moyer, to install the Millers' satellite dish.

{¶ 3} Moyer arrived at the Millers' home at approximately 10:45 on the morning of February 8 to install the dish. Upon his arrival, Mr. Miller walked Moyer through the house, indicating the locations of the televisions and the wiring. In response to Moyer's question regarding the location of the splitter, Mr. Miller brought Moyer to the crawl space area, which they accessed by going through the back door of the house and opening a door to the garage. Mr. Miller informed Moyer that in order to access the crawl space, a step needed to be removed. Mr. Miller then removed a Rubbermaid tote from the area, thus making access to the crawl space easier. At some point thereafter, in Mr. Miller's presence, Moyer removed the step that exposed the crawl space.

{¶ 4} Within the next hour, Moyer brought boxes of equipment into the house and he began working in the area of the crawl space. As Moyer continued to unpack some boxes, Mr. Miller left Moyer to attend to his own matters. Mr. Miller worked in his home office while Moyer continued working on the installation, walking from room to room at times. During this time, Moyer advised Mr. Miller that he had been in the crawl space and easily located the splitter and the work that remained was fairly straightforward.

2.

{¶ 5} Approximately two hours later, 1:30 p.m. to 2:00 p.m., Mr. Miller decided to leave the house and go to his church to discuss some things with the church secretary and to retrieve his paycheck. Mr. Miller exited the house through the door to the garage. He stated that he exited that way because he was able to and because he was curious about how Moyer was working in the crawl space. In order to exit the house this way and to avoid stepping into the open crawl space, Mr. Miller stepped to the side of the crawl space area. He testified that he was very cautious in opening the door to the garage and the exposed crawl space area because he knew that Moyer was working there and he wished to avoid the danger of the exposed crawl space.

{¶ 6} Mr. Miller returned from church after approximately twenty minutes. Once again, he returned to the same location of the house where Moyer was working. Mr. Miller stated that he wanted to see Moyer's progress. Mr. Miller observed the opened crawl space and "stepped up" in order to enter the house from the garage. Mr. Miller indicated that he intentionally made an effort to avoid the exposed crawl space.

{¶ 7} Because the installation was taking longer than Mr. Miller expected, at approximately 4:00 p.m., he decided to leave the house once again and go to the bank. He was aware that Moyer was still working on the installation. At this time in the afternoon, Mr. Miller observed Moyer "going in and out the back door." Mr. Miller stated that he had no conversation with Moyer regarding the crawl space at this point in time and he had no knowledge of whether the crawl space was still exposed.

3.

**{¶ 8}** Mr. Miller proceeded to exit the house through the same garage door near the crawl space in order to go to the bank. Contrary to the earlier deliberate caution he used when exiting the house, this time Mr. Miller, out of "routine," opened the door and stepped into the exposed crawl space, consequently injuring himself. Mr. Miller stated that had he exited the house in the same deliberate manner as he exited previously, he would have seen that the step that usually covers the crawl space was not there.

**{¶ 9}** The Millers filed a complaint against Moyer, Directsat, and DirecTV. The Millers alleged that Moyer failed to warn Mr. Miller of the danger of the exposed crawl space and Directsat and DirecTV failed to properly train Moyer. The complaint also named Blue Cross Blue Shield Blue Plus of Minnesota as a party due to the health insurer's subrogation interest. The complaint further included a claim of the loss of consortium suffered by Mrs. Miller.

**{¶ 10}** Moyer, Directsat, and DirecTV, collectively, moved for summary judgment. The trial court granted summary judgment in favor of the defendants, finding that Mr. Miller was "on notice of the condition to be avoided" and his "failure to avoid a known peril is not excused by the fact that he 'did not think' or 'forgot.'" Because the trial court did not specifically address the subrogation claim of Blue Cross Blue Shield Blue Plus of Minnesota, the Millers filed a motion for reconsideration of the summary judgment or, in the alternative, a final appealable order. Thereafter, the trial court issued an order denying the Millers' request for reconsideration in so far as the Millers sought a

4.

modification of the court's prior ruling. With this order, the trial court upheld its original ruling in favor of the defendants. The trial court also stated that "[a]s regards a final appealable order, the court rules that the cross claim of Blue Cross Blue Shield Blue Plus of Minnesota for subrogation reimbursement is also denied by virtue of the summary judgment ruling."

{¶ 11} The Millers now appeal the trial court's judgment, assigning one error for our review:

> The trial court conflated the concept that the open-and-obvious doctrine is not a defense available to independent contractors with the issue of contributory negligence. By merging these distinct concepts in its summary judgment ruling, the trial court erroneously usurped the jury's function of apportioning fault.

**Summary Judgment**

{¶ 12} Summary judgment is appropriate when: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Civ.R. 56(C). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the moving party's pleadings; rather, it has a reciprocal burden of setting forth specific facts demonstrating that there is a genuine

5.

triable issue. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 663 N.E.2d 639 (1996).

{¶ 13} We review the trial court's judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

## Law and Analysis

{¶ 14} In the Millers' sole assignment of error, they allege that the trial court erred in granting summary judgment in the appellees' favor by "merging" the concepts of the "open and obvious" doctrine with the issue of contributory negligence. By doing so, the Millers contend, the trial court "usurped the jury's function of apportioning fault."

{¶ 15} This case concerns the liability of Moyer, an independent contractor, for work performed on the Millers' property at the behest of the Millers. Under Ohio law, an independent contractor who creates a dangerous condition on someone else's property is subject to the general laws of negligence. *See Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 597 N.E.2d 504 (1992); *see also Rosenbrook v. Bd. of Lucas Cty. Commrs.*, 2015-Ohio-1793, 33 N.E.3d 562 (6th Dist.). In such cases, the open and obvious doctrine, which shields an owner or occupier of land from the duty to protect against open and obvious dangers, does not relieve an independent contractor of liability. *Semprich v. Erie Cty.*, 6th Dist. Erie No. E-12-070, 2013-Ohio-3561, ¶ 19, citing *Simmers* at 645. Where the independent contractor does not create the dangerous condition, however, courts have held that the independent contractor is entitled to the

6.

same immunities as the owner or occupier. *Howard v. Meat City, Inc.*, 3d Dist. Allen No. 1-16-32, 2016-Ohio-7989, ¶ 24; *Krause v. G&C Properties*, 8th Dist. Cuyahoga No. 66379, 1994 Ohio App. LEXIS 4941, 7 (Nov. 3, 1994); *Rinehart v. Fed. Natl. Mtge. Assn.*, 91 Ohio App.3d 222, 231, 632 N.E.2d 539 (2d Dist.1993).

{¶ 16} Here, we find that the crawl space itself is not a dangerous condition. Rather, the crawl space became dangerous only when the step covering the crawl space was removed, thus exposing the open crawl space. We therefore find that when Moyer removed the step in order to access the crawl space, he created a dangerous condition. Standard principles of negligence apply.

{¶ 17} In order to establish actionable negligence, a party must show (1) a duty owed, (2) a breach of that duty, and (3) an injury proximately resulting from that breach. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). A trial court properly grants summary judgment in a negligence action "[w]hen the defendants, as the moving parties, furnish evidence which demonstrates the plaintiff has not established the elements necessary to maintain [a] negligence action." *Feichtner v. Cleveland*, 95 Ohio App.3d 388, 394, 642 N.E.2d 657 (8th Dist.1994), citing *Keister v. Park Centre Lanes*, 3 Ohio App.3d 19, 443 N.E.2d 532 (5th Dist.1981).

{¶ 18} The absence of any one of the elements necessary to maintain a negligence action renders a plaintiff's claim of negligence insufficient as a matter of law. *Hairston v. Gary K. Corp.*, 8th Dist. Cuyahoga No. 87199, 2006-Ohio-5566, ¶ 7, citing *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989). Specifically, "'[i]f there is no

7.

duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence.'" *Jeffers* at 616, quoting 70 Ohio Jurisprudence 3d, Negligence, Section 13, at 53-54 (1986).

{¶ 19} In Ohio, "duty" is "'the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.'" *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 23, quoting *Commerce & Indus. Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). The existence of a duty depends on the foreseeability of the injury or the harm. *Menifee* at 77. And the test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance of an act. *Id.*; *Gauci v. Ryan's Family Steak Houses, Inc.*, 6th Dist. Lucas Nos. L-03-1248 and L-03-1322, 2004-Ohio-3803, ¶ 10 (stating that the duty of care is care that is ordinarily exercised by a reasonable and prudent person under the same or similar circumstances). "When the injured person comes within the circle of those to whom injury may reasonably be anticipated, the defendant owes him a duty of care." *Tarantino v. Cavaliers Operating Co., L.L.C.*, 8th Dist. Cuyahoga No. 97766, 2012-Ohio-2636, ¶ 18.

{¶ 20} The determination of whether a duty exists is a question of law. *Gauci* at ¶ 10, citing *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

{¶ 21} Here, we find that an injury to Mr. Miller was not foreseeable, and therefore, Moyer owed no duty to Mr. Miller to warn or otherwise make the premises

8.

safe for him. The evidence demonstrates that Mr. Miller was present when Moyer removed the step that covered the crawl space. After approximately two hours of working in his home, Mr. Miller exited through the door to the garage, observed the exposed crawl space, and stepped around the opening. A short time later, Mr. Miller entered the house through the same door in the garage. He stated that he wished to check on Moyer's progress with the installation. At this time, Mr. Miller, once again, observed the exposed crawl space and "stepped up" into the house, intentionally making an effort to avoid the exposed crawl space. Under these circumstances, we cannot find that a reasonably prudent person would have anticipated that two hours later, Mr. Miller would have injured himself by stepping into the exposed crawl space of which he not only had knowledge, but had cautiously and deliberately traversed on two previous occasions hours earlier that day.

{¶ 22} The Millers contend that the trial court "usurped the jury's function of apportioning fault" by "merging" the concepts of the open and obvious doctrine with the issue of contributory negligence. However, where an individual owes no duty, there can be no negligence to compare. *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 2005-Ohio-2098, 828 N.E.2d 683, ¶ 29 (6th Dist.). Having found no duty on Moyer's part, the issue of Mr. Miller's negligence is immaterial. *See Zitron v. Sweep-A-Lot*, 10th Dist. Franklin No. 09AP-1110, 2010-Ohio-2733, ¶ 19.

9.

**{¶ 23}** The Millers' sole assignment of error is found not well-taken.

**{¶ 24}** It is ordered that appellee recover of appellant costs herein taxed.

**{¶ 25}** The court finds there were reasonable grounds for this appeal.

**{¶ 26}** It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Tim McCormack, J.

_____
JUDGE

Kathleen Ann Keough, A.J.

Melody J. Stewart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

Judges Tim McCormack, Kathleen Ann Keough and Melody J. Stewart, Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.