[Cite as *Sczublewski v. Kroger Co.*, 2025-Ohio-2029.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Michael Sczublewski                          Court of Appeals No. L-24-1035

    Appellant                              Trial Court No. CI0202203970

v.

The Kroger Company, et al.,                  **DECISION AND JUDGMENT**

    Appellees                              Decided: June 6, 2025

* * * * *

Michael A. Bruno, Zackary M. Shaffer, and
Charles E. Boyk, attorneys for appellant.

Mark P. Seitzinger and Jack R. Diedrick, attorneys
for The Kroger Company, appellee.

Douglas A. Spidel, attorney for
The Dotson Company, Inc., appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Plaintiff-appellant, Michael Sczublewski appeals the January 24, 2024

judgment of the Lucas County Court of Common Pleas, granting summary judgment in

favor of defendants-appellees, The Kroger Company and The Dotson Company. For the following reasons, we reverse.

## I. Background

{¶ 2} Michael Sczublewski was a patron of the Kroger store located at 6235 Monroe Street in Sylvania, Lucas County, Ohio. On November 21, 2018, Sczublewski suffered injuries after falling in the store's vestibule—the area between the outer door and inner door of the store. He filed claims for negligence and vicarious liability against Kroger and against Dotson, a contractor that was performing renovations to the vestibule. The parties exchanged discovery and Sczublewski's deposition was taken. After motions for summary judgment were filed, depositions were taken of William Baker, Dotson's now-retired superintendent who supervised the construction project, and Scott Wojtkowiak, Kroger's current store leader for its Monroe Street location.

## A. Sczublewski's Fall

{¶ 3} According to Sczublewski, on November 21, 2018, just before Thanksgiving, Kroger was performing renovations to its store, including the vestibule. Sczublewski and his son arrived at Kroger around noon and parked in a handicap spot. Sczublewski, who walks in "baby steps" due to a 2014 ATV accident, entered the vestibule while his son stood outside finishing a cigarette.

{¶ 4} Upon entering the vestibule, Sczublewski saw a Kroger employee emptying recycled bags from a bin. Normally Sczublewski would have walked directly toward the carts located in the vestibule, but this employee was blocking his path. To get to the carts, he had to walk to the left, behind the employee, then around her, to the right. About two steps

2.

after passing the Kroger employee, as he was cutting toward the shopping carts, Sczublewski tripped over a bump in a rug.  Although he did not see the bump before he fell, he saw it as he fell forward.  After falling, Sczublewski yelled at the employee, "you got to do something about that bump."  He then proceeded with his shopping.

{¶ 5} Sczublewski did not immediately investigate why the rug had a bump in it, but a few hours later, one of his sons returned to Kroger to figure it out and take photos.  It turned out that the rug had been centered over a piece of plywood that was affixed to the floor with black tape, which Sczublewski described as being a half-inch thicker than the finished floor.  The rug was not long enough to cover the entire piece of plywood, so a small area of plywood was exposed.  To the left of the rug was permanently-installed carpet with a different pattern than the rug.  That carpet marked a path into the store that first led straight, then jutted to the right at an approximately 45-degree angle, then jutted back to the left again.  The top of the rug was situated so that it touched the carpet where it jutted to the right.  To the right of the rug was cream colored tile.  Just in front of the rug was another exposed piece of plywood, affixed to the floor with black tape.  Although the rug, plywood, and tile all had contrasting colors, Sczublewski testified that the Kroger employee blocked his view of that area of the floor, including the piece of the mostly-covered piece of plywood.  He said that he was looking forward to where he was walking, but did not see it because of where the employee was positioned.

{¶ 6} The day after Thanksgiving, Sczublewski went back to the store and spoke to the store manager.  The rug was still there, covering the wood.  He told the manager to put a cone over it so that no one else would trip on it.

3.

## B. Summary Judgment Motions

{¶ 7} Kroger and Dotson filed motions for summary judgment. Kroger argued that Sczublewski's claims must be dismissed because he was unable to sufficiently identify how and why he fell. It claimed that no one knew how or when the boards came to be covered by a rug without a warning sign, thus Kroger could not be liable for the condition of the floor. Kroger acknowledged that Sczublewski was a business invitee, thus it owed a duty of ordinary care and a duty to maintain the store so as not to unreasonably expose him to a dangerous condition. It argued that as a matter of law, it owed no duty here because the height difference between the plywood and the floor was less than two inches and no attendant circumstances existed to make this otherwise trivial defect an unreasonably dangerous condition. Alternatively, Kroger argued, if the two-inch rule was found to be inapplicable, then it was not liable because the condition was open and obvious. It cited case law where courts held that bumps in carpets or rugs were open and obvious dangers. It pointed to Sczublewski's testimony indicating that the plywood, tile, and rug were all distinguishable in color, the rug did not fully conceal the plywood, and Sczublewski would have seen the bump if he was looking down.

{¶ 8} Like Kroger, Dotson argued that it could not be liable because Sczublewski was unable to adequately identify what caused his fall. It also claimed that Sczublewski could not say which defendant was responsible for creating the condition or how it was created. Dotson argued that a bump in a rug is not sufficient to support liability.

4.

{¶ 9} After Kroger and Dotson filed their motions, Sczublewski deposed Baker and Wojtkowiak. Baker testified that Dotson was the general contractor and oversaw the work in the vestibule, which was being performed by a subcontractor. He described that they "tore up" the front entrance and installed a new grocery cart corral. He said that they used 5/8-inch plywood strips of the same size and thickness, flush with the tile and flattened out so there would be just a minor transition in height elevation. Baker explained that work was typically performed on the project between 9:00 p.m. and 7:00 a.m., thus no one from Dotson would have been present when Sczublewski fell. He testified that while work remained in progress, they would "throw them rugs on there" in an effort "to keep a trip hazard out." Baker conceded that Dotson was responsible for warning patrons about hazards on the ground.

{¶ 10} Wojtkowiak—who became Store Leader sometime after the fall—testified that regardless of any contract that may shift liability to a contractor, it is the responsibility of Kroger's "Store Leader to make sure that it's a safe environment."

{¶ 11} Sczublewski responded to Kroger and Dotson's motions for summary judgment. He maintained that Dotson created the hazard here by placing a rug over raised plywood without barricading it or warning patrons. He further maintained that Kroger owed a duty to warn patrons of hidden dangers. Sczublewski disagreed that the hazard was open and obvious given that the uneven plywood was concealed under a rug. He also argued that it was not a trivial imperfection because it was not something that a patron would normally encounter, it was concealed, and there were no warning signs. Sczublewski claimed that attendant circumstances increased the risk here, including the

5.

fact that the hazard was concealed.  Finally, Sczublewski insisted that he sufficiently identified the cause of his fall—the bump in the rug created by the raised plywood—even though he did not see it before he fell.

{¶ 12} Kroger replied, reiterating the positions articulated in its initial motion.  It also maintained that it did not have actual or constructive knowledge of the hazard here, so it could not be liable for Sczublewski's injuries.  It insisted that there was no evidence as to how long the condition existed, a fact essential to finding constructive knowledge.  Kroger acknowledged that there was an employee in the vestibule blocking Sczublewski's path to the carts, but insisted that his view of the floor was not blocked.

## C. Trial Court Judgment

{¶ 13} The trial court granted summary judgment in favor of Kroger and Dotson.  As to Kroger, it found that Kroger was not liable because the hazard was open and obvious and Sczublewski would have seen the bump if he had been looking.  It found that no attendant circumstances relieved him from the open-and-obvious doctrine.  As to Dotson, the trial court found that Sczublewski could only speculate about the cause of his fall, which was insufficient to support a claim for negligence.

{¶ 14} Sczublewski appealed.  He assigns the following errors for our review:

A. The trial court erred by granting summary judgment to The Kroger Company in finding that the hazard was open and obvious. The trial court improperly relied on statements of probability that Appellant may have been able to observe the hazard prior to his fall, but only after he observed it from a lower vantage point.

B. The trial court erred by granting summary judgment to The Kroger Company when there is a genuine issue of material fact regarding the existence of attendant circumstances.

6.

C. The trial court erred by granting summary judgment to The Dotson Company in finding that Appellant was unable to sufficiently identify the cause of his fall.

## II. Standard of Review

{¶ 15} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129 (9th Dist. 1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67 (1978), Civ.R. 56(C).

{¶ 16} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio

7.

App.3d 301, 304 (6th Dist. 1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826 (8th Dist. 1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### III. Law and Analysis

{¶ 17} Sczublewski's assignments of error challenge the trial court's conclusions that (1) the hazard was open and obvious, (2) there were no attendant circumstances preventing application of the open and obvious doctrine, and (3) he did not sufficiently identify the cause of his fall. Sczublewski argues that genuine issues of material fact exist precluding summary judgment, and Kroger and Dotson's motions should have been denied.

{¶ 18} In a negligence action, a plaintiff must prove (1) the existence of a duty, (2) breach of that duty, (3) injury, and (4) proximate cause. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). "A defendant's duty to a plaintiff depends on the relationship between the parties and the foreseeability of injury in the plaintiff's position." *Delta Fuels, Inc. v. Consol. Environmental Servs., Inc.,* 2012-Ohio-2227, ¶ 27 (6th Dist.). Injury is foreseeable when a defendant knows or should have known that its act or omission was likely to cause harm. *Id.* The existence of a duty is a question of law. *Mussivand* at 318.

{¶ 19} Here, the parties agree that as between Kroger and Sczublewski, Sczublewski was a business invitee. A store owner owes business invitees "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.,* 18 Ohio St.3d 203, 203 (1985), citing *Campbell v. Hughes Provision Co.*, 153 Ohio St. 9 (1950). It also owes a duty to warn invitees of latent or hidden dangers. *Clark v. BP Oil,* 2005-Ohio-1383, ¶ 10 (6th Dist.), citing *Paschal* at *id.*

8.

{¶ 20} As between Sczublewski and Dotson, Dotson was a contractor performing renovations to Kroger's property. "Under Ohio law, an independent contractor who creates a dangerous condition on someone else's property is subject to the general laws of negligence." *Miller v. Moyer,* 2017-Ohio-7106, ¶ 15 (6th Dist.).

{¶ 21} With these principles in mind, we address Sczublewski's assignments of error. We first address his third assignment of error. We then combine our discussion of his first and second assignments of error.

### A. Cause of the Fall

{¶ 22} In his third assignment of error, Sczublewski argues that the trial court erred when it found that he did not sufficiently identify the cause of his fall. He denies that he merely speculated as to what caused his fall. He maintains that the hazard that caused his fall was the raised plywood taped to the floor and concealed by a rug.

{¶ 23} Dotson responds that Sczublewski admitted that he did not see the bump before his fall, he was not paying attention to the rug, he was not looking at the floor when he walked in, and he could have seen the bump if he would have been looking. It cites several cases involving trip-and-falls on rugs where courts have recognized that summary judgment is appropriate if the plaintiff cannot show that there existed a defect in the rug before his fall. Dotson argues that because Sczublewski did not see the bump before his fall and could only say what the bump looked like after his fall, his explanation for his fall was merely speculative. Dotson also points out that Baker testified that the wood was flush with the tile and was angled to flatten it out.

9.

{¶ 24} Kroger too argues that Sczublewski's explanation for the fall was speculative. Some of its arguments mirror Dotson's, but Kroger also claims that there was no evidence that it had constructive notice of the hazard here because there was no evidence explaining how the boards came to be covered up or when this occurred. Kroger's latter arguments will be discussed when we address Sczublewski's second and third assignments of error.

{¶ 25} To recover for injuries resulting from a trip and fall, a plaintiff must be able to identify what caused the fall. *Beair v. KFC Nat. Mgt. Co.,* 2004-Ohio-1410, ¶ 9 (10th Dist.). At his deposition, Sczublewski explained why he fell: he tripped over a bump—later determined to be a piece of raised plywood that had been taped to the floor—concealed by a rug that was placed over it. He testified: "I hit that board that was under the carpet." Although he did not know the cause of his fall at the moment he fell, he saw the bump after he fell. His son went back to Kroger later that day, pulled the rug away, observed the raised plywood, and took photos of it. Sczublewski reasonably deduced that the bump over which he tripped was created by the uneven plywood covered by the rug and he asserted this belief at his deposition. In fact, the hazard remained days later, prompting Sczublewski to confront Kroger's manager and insist that a caution cone be placed over the obstruction.

{¶ 26} Dotson cites several cases in support of its position that summary judgment was proper because Sczublewski could only say what the rug looked like *after* the incident. All of these cases are distinguishable. In *Edens v. The Pla-Mor,* 1998 WL 753237, *1 (5th Dist. Oct. 5, 1998), the plaintiff alleged that he tripped over a rug that was wrinkled or folded over, but neither he nor his witnesses saw the rug before the fall, so they could not say whether the rug was "scrunched up" before plaintiff fell or whether it became "scrunched

10.

up" as a result of the fall. *Nagy v. Viacom,* 1993 WL 489762, *3 (8th Dist. Nov. 24, 1993) and *Muller v. U.S. Postal Serv.,* 811 F.Supp. 325, 328 (N.D.Ohio 1992), also cited by Dotson, involved similar situations.

{¶ 27} Here, unlike the cases cited by Dotson, the bump in the rug was not a transient condition like a wrinkled rug, and the bump could not have been produced by the fall itself. A piece of raised plywood was attached to the floor and ran down the middle of the rug. While Dotson maintains that the plywood was flush with the tile, Sczublewski testified to the contrary and the photos appear to support Sczublewski's testimony. We, therefore, agree with Sczublewski that he sufficiently identified the cause of his fall.

{¶ 28} We find Sczublewski's third assignment of error well-taken.

### B. Open and Obvious and Attendant Circumstances

{¶ 29} In his second assignment of error, Sczublewski argues that the trial court erred when it concluded that Kroger owed no duty because the hazard here was open and obvious. He emphasizes that statements he made at deposition indicating that he could have seen the bump were misconstrued, and when read in its entirety, his deposition testimony establishes that he only had the opportunity to see the bump from his vantage point when falling over it. Sczublewski also maintains that he presented evidence of attendant circumstances to overcome application of the open-and-obvious doctrine.

{¶ 30} Kroger argues that it owed only a duty of ordinary care here. It denies that it created the hazard or that it had constructive notice of its existence because (1) "no one seems to know how the boards came to be in the area in which [Sczublewski] fell became covered up by a rug instead of using a warning sign," (sic) and (2) "[t]here is absolutely no

11.

evidence in the record as to how long this condition existed prior to [Sczublewski's] fall." Kroger maintains that "[w]ithout any evidence to prove how long a hazard existed, there can be no constructive notice." Kroger also submits that the hazard here was either insubstantial because the height difference was less than two inches, or it was open and obvious, thus Kroger owed no duty to warn of it. It denies that attendant circumstances were present here.

{¶ 31} Before discussing whether the hazard was either insubstantial or open and obvious, we address Kroger's claim that there is no evidence showing how or when the boards became covered up by a rug. Where a business owner is not responsible for creating the hazard at issue, the plaintiff must show that (1) the owner or one of its employees "had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly," or (2) the danger existed "for a sufficient time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care." *Johnson v. Wagner Provision Co.,* 141 Ohio St. 584 (1943), paragraph three of the syllabus.

{¶ 32} Here, contrary to Kroger's argument, we *do* know how the board came to be covered by a rug. Baker testified that a Dotson employee did it. We also know that the rug had been there for at least five hours. We know this because Baker testified that Dotson performed work between 9:00 p.m. and 7:00 a.m., and Sczublewski testified that his fall occurred around noon. Especially given Sczublewski's testimony that a Kroger employee was standing right in front of the hazard, this was long enough to create at least a genuine issue of material fact concerning Kroger's constructive knowledge of the hazard created by the concealed plywood.

12.

{¶ 33} Turning to Kroger's other claims—that the hazard was either insubstantial or open and obvious—we recognize that a store owner is not an insurer of its customers' safety. *Paschal,* 18 Ohio St.3d at 203. It has no duty to protect against known dangers or dangers that are so apparent that the invitee himself may reasonably be expected to discover and avoid them. *Id.* at 203-204, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus. "A hazard is considered to be open and obvious when it is in plain view and readily discoverable upon ordinary inspection." *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.,* 2009-Ohio-6677, ¶ 68 (6th Dist.), citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 51 (5th Dist. 1989). "Whether a hazard is open and obvious must be determined on the facts in each case." *Id.*, citing *Navarette v. Pertoria, Inc.,* 2003-Ohio-4222, ¶ 19 (6th Dist.). Where the facts are undisputed, it is generally a question of law whether a condition on the premises is an open and obvious danger. *Rice v. Kroger,* 2020-Ohio-2654, ¶ 7 (6th Dist.), citing *Howard v. Meat City, Inc.*, 2016-Ohio-7989, ¶ 12 (3d Dist.). But "where the facts are disputed or reasonable minds could differ regarding whether the danger is open and obvious because of the attendant circumstances, the issue must be submitted to a jury for determination." *Id.*

{¶ 34} Just as invitees will not be liable for injuries caused by an open and obvious danger, neither will it be liable for injuries caused by an insubstantial defect. *Turner v. Burndale Gardens Co.,* 1991 WL 270662, *2 (2d Dist. Dec. 18, 1991). In *Cash v. Cincinnati*, 66 Ohio St.2d 319, 324, (1981), the Ohio Supreme Court recognized that there is a rebuttable presumption that height differences of two inches or less are insubstantial as a matter of law. *Harrigill v. Thompson Concrete, Ltd.,* 2017-Ohio-9201, ¶ 12 (10th Dist.).

13.

This presumption may be rebutted if attendant circumstances suffice to render the defect substantial. *Id.,* citing *Stockhauser v. Archdiocese of Cincinnati,* 97 Ohio App.3d 29, 33 (2d Dist. 1994).

{¶ 35} An attendant circumstance is a factor that contributes to a fall and is beyond the control of the injured person. *Jackson v. Pike Cty. Bd. of Commrs.,* 2010-Ohio-4875, ¶ 21 (4th Dist.), citing *Backus v. Giant Eagle, Inc.*, 115 Ohio App.3d 155, 158 (7th Dist. 1996). "'The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event.'" *Id.,* quoting *Cummin v. Image Mart, Inc.,* 2004-Ohio-2840, ¶ 8 (10th Dist.), citing *Cash* at 324. It includes any distraction that would reduce the degree of care that an ordinary person would exercise. *Id.,* quoting *McGuire* at 499. It does not include "the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making." *Id.* at ¶ 22, citing *McGuire* at 498. The existence of attendant circumstances may create a genuine issue of material fact precluding summary judgment. *Snyder v. Kings Sleep Shop, LLC,* 2014-Ohio-1003, ¶ 22 (6th Dist.), citing *McGuire* at 498 (1st Dist. 1996).

{¶ 36} Here, we disagree that as a matter of law, the hazard was open and obvious. In fact, the hazard—the uneven plywood—was purposely covered up by a rug. Baker, Dotson's former superintendent, testified that "[they] throw them rugs on there" in an effort "to keep a trip hazard out." Although Dotson's purpose for putting the rug down was to prevent a tripping hazard, the effect was to *conceal* the hazard.

14.

{¶ 37} Kroger argues that Sczublewski should have appreciated that there was a piece of plywood taped in place under the rug because the plywood was a different color than the tile and the carpet. Pictures taken after the incident do depict an area where the plywood was visible. But Sczublewski explained that at the time he tripped over it, the rug was placed such that it covered more of the plywood than what is depicted in the photo. While Sczublewski acknowledged that the rug was not long enough to entirely cover the plywood, the more the plywood was covered, the more difficult it would have been to discern that a hazard lurked under the rug. The black tape only added to this difficulty because the trim of the rug was also black, causing the tape and the edges of the rug to blend together.

{¶ 38} Kroger also argues that nothing was obstructing Sczublewski's ability to see the hazard when he walked into the store, nor was there anyone walking in front of him, blocking his view. But this ignores Sczublewski's testimony. Sczublewski described that a Kroger employee was standing in front of the rug, emptying recycled bags from a bin, further concealing the hazard. He testified that he was looking ahead as he entered the vestibule, but the employee collecting bags was positioned such that she blocked his view of any part of the plywood that was exposed (Q: "Did she block your view of that?" A: "Of the piece of the exposed?" Q: "Yes." A: "I would say yes."). He described that he walked behind her so that he could cross the vestibule to get a shopping cart. He scanned the area ahead of him, and saw the employee ("[S]he was standing there, I was looking there and I was looking forward to see where I was walking."). Based on his description of the incident, it was only after he got beyond the employee that he could have detected the bump in the

15.

rug, and that would have required him to look directly down rather than scan ahead for obstructions as one typically does while walking.

{¶ 39} Kroger and Dotson emphasize Sczublewski's testimony that he could have seen the bump in the rug if he had been looking. Sczublewski did testify that if he was looking for a bump, he probably would have seen it. But while a person is expected to watch where he or she is going, it is impractical to expect a person to always be looking down. *See Grossnickle v. Village of Germantown,* 3 Ohio St.2d 96 (1965), paragraph two of the syllabus (observing that a pedestrian is not, "as a matter of law, required to look constantly downward"). Sczublewski testified that he was looking ahead, but the employee collecting bags was positioned such that she would have blocked his view ("She had to have been blocking it because she was standing right there."). What's more, Sczublewski testified that if the employee had not been there, he would have taken the shorter, more direct route to the shopping carts, avoiding the area altogether.

{¶ 40} This case is distinguishable from cases cited by Kroger where summary judgment was granted to business owners for falls caused by rugs. In *Novik v. Kroger Co.,* 2011-Ohio-5737 (3d Dist.), the plaintiff tripped over "humped up" rugs. Unlike the present case, the court specifically found that there was no evidence that there was anything present to otherwise obstruct or distort her view of the mats. *Id.* at ¶ 24. It is also distinguishable from *Lowe v. Local Union No. 14 U.A.W.,* 2020-Ohio-703, ¶ 26 (6th Dist.). In *Lowe*, the plaintiff caught her foot on a mat that was placed over an incline. Again, unlike the present case, we noted that there was no evidence that the plaintiff's view of the entryway was obstructed in any way at the time of her fall. The same is true with respect to *Smock v. Bob*

16.

*Evans Farms, Inc.,* 2003-Ohio-832, ¶ 12 (9th Dist.), where the plaintiff tripped over a curled-up rug. The court granted summary judgment to the defendant, noting that "the lobby was empty, there were no other customers in the area of the carpet, . . . the area was well-lit, . . . no one was in front of her as she entered the premises . . ., nothing obstructed her view, and nothing distracted her."

{¶ 41} We find that this case is more like *Grudzinski v. Seaway Food Town, Inc.,* 1996 WL 354890 (6th Dist. June 28, 1996). In *Grudzinski*, we reversed summary judgment in favor of the defendant-grocery store where the plaintiff tripped over a bulge in two floormats. We concluded that genuine issues of material fact existed as to whether or not the bulging in the mats was an open and obvious danger. In reaching this conclusion, we observed that the grocery store knew of the tendency of the mats to bulge together, the mats were partially located under a two-foot overhang of the fruit and vegetable counters, the plaintiff had to walk around a one-foot-wide post that may have made the mat protrusion unobservable from a reasonable line of sight, and although plaintiff's wife encountered the raised mats while trying to push her shopping cart over them, she was unable to alert her husband quickly enough.

{¶ 42} In sum, we disagree that there was no evidence of attendant circumstances as required to overcome the two-inch rule or the open and obvious doctrine. The obstruction was concealed by a rug and an employee was standing in front of the area of the obstruction. We would also add that Kroger was in the midst of an ongoing construction project and was therefore aware of possible dangers to patrons posed by this project. Sczublewski testified that he had been in that Kroger during construction and oftentimes, construction areas were

17.

barricaded.  This one wasn't.  These facts could constitute attendant circumstances potentially excusing Sczublewski's failure to appreciate that a hazard lay ahead.

{¶ 43} Accordingly, we find Sczublewski's first and second assignments of error well-taken.

## IV. Conclusion

{¶ 44} We conclude that the hazard here was not open and obvious.  To the contrary, the hazard—a piece of raised plywood duct taped to the floor—was purposely concealed by a rug.  We find Sczublewski's first assignment of error well-taken.

{¶ 45} We also conclude that Sczublewski presented evidence of attendant circumstances that may overcome the two-inch rule or the open and obvious doctrine.  Specifically, the hazard was concealed by a rug, an employee was standing in front of the area of the obstruction, and Kroger was in the midst of an ongoing construction project and Sczublewski knew the store to barricade hazards posed by construction activities.  We find Sczublewski's second assignment of error well-taken.

{¶ 46} Finally, we conclude that Sczublewski sufficiently identified the cause of his fall.  We find Sczublewski's third assignment of error well-taken.

{¶ 47} We find that genuine issues of material fact preclude summary judgment in favor of Kroger and Dotson.  We reverse the January 24, 2024 judgment of the Lucas County Court of Common Pleas and remand for proceedings consistent with this

18.

decision.  The Kroger Company and Dotson Company are ordered to share the costs of this appeal under App.R. 24.

Judgment reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See, also*, 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.
_____
JUDGE


Charles E. Sulek, P.J.
CONCUR.
_____
JUDGE


Thomas J. Osowik, J.
DISSENTS AND WRITES
SEPARATELY.


**OSOWIK, J., dissenting.**

{¶ 48} For the following reasons, I respectfully dissent and would affirm the trial court's decision granting the motions for summary judgment by appellees The Kroger Company ("Kroger") and The Dotson Company ("Dotson").

<u>B. Trip-and-Fall Negligence</u>

{¶ 49} It is undisputed that appellant was a business invitee of Kroger. A business invitee is an individual who is "'rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest.'" (Citation omitted.) *Clark* 19.

*v. BP Oil*, 2005-Ohio-1383, ¶ 10 (6th Dist.). "A business owner owes its invitees a duty of ordinary care 'in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger.'" *DeVault v. St. Charles Mercy Hosp.*, 2006-Ohio-1626, ¶ 13 (6th Dist.), quoting *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). A business owner is not an insurer of a business invitee's safety and is under no duty to protect a business invitee from dangers known to the invitee "'or are so obvious and apparent to such invitee that he may reasonably be expected to discover [the dangers] and protect himself against them.'" *Paschal* at 203-204, quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus.

{¶ 50} This court uses the phrases trip-and-fall and slip-and-fall interchangeably for purposes of this negligence action.

> To recover in a slip and fall negligence case against the premises owner, the invitee must establish: (1) that the premises owner through its officers or employees was responsible for the hazard complained of; or (2) that at least one of those persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or (3) that the danger had existed for a length of time sufficient to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care.

*DeVault* at ¶ 14.

{¶ 51} Where the open-and-obvious doctrine applies, it "obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong v. Best Buy Co.*, 2003-Ohio-2573, ¶ 5, 8. "A hazard is considered to be open and obvious when it is in plain

20.

view and readily discoverable upon ordinary inspection." *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.*, 2009-Ohio-6677, ¶ 68 (6th Dist.).

> Even when an invitee does not actually see the object or danger until after he or she falls, no duty exists when the invitee could have seen the object or danger if he or she had looked. The issue of whether a risk was open and obvious may be decided by the court as a matter of law when only one conclusion can be drawn from the established facts. But, where reasonable minds could reach different conclusions as to the obviousness of the risk, the issue should be resolved by a jury.

*Semprich v. Cty. of Erie*, 2013-Ohio-3561, ¶ 12 (6th Dist.).

{¶ 52} This court has described attendant circumstances, the existence of which may distract the invitee from exercising the degree of care an ordinary person would have exercised to avoid the danger, as all the factors both contributing to and reducing the risk of the fall that is beyond the control of the injured party. *Townsend v. Dollar Gen. Corp.*, 2010-Ohio-6523, ¶ 24-26 (6th Dist.). "While there is no precise definition of attendant circumstances, they generally include any distraction that would come to the attention of an invitee in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." *Hunter v. Hall*, 2008-Ohio-4485, ¶ 12 (6th Dist.)."[T]he issue is whether a reasonable person would have seen the danger and not whether a particular plaintiff saw it." *O'Connor v. Kroger Co.*, 2017-Ohio-1077, ¶ 9 (6th Dist.).

{¶ 53} Under the "two-inch doctrine," where the floor surface defect amounts to a raise in elevation of two inches or less, and the plaintiff has presented no evidence of any attendant circumstances which would present a jury question as to whether such a defect might be deemed unreasonable or insubstantial, judgment as a matter of law in favor of the defendant is appropriate. *Diamond v. TA Operating L.L.C.*, 2013-Ohio-3951, ¶ 12 (6th

21.

Dist.); *O'Connor* at ¶ 10-14 (no question of fact for a jury if the attendant circumstances described by plaintiff do not alter the fact that the insignificant defect could have been seen if a reasonable person had been paying attention).

{¶ 54} Between the appellees, Dotson is an independent contractor to Kroger to oversee the vestibule renovation work. "Under Ohio law, an independent contractor who creates a dangerous condition on someone else's property is subject to the general laws of negligence." *Miller v. Moyer*, 2017-Ohio-7106, ¶ 15 (6th Dist.). "In such cases, the open and obvious doctrine, which shields an owner or occupier of land from the duty to protect against open and obvious dangers, does not relieve an independent contractor of liability." *Id.* "Where the independent contractor does not create the dangerous condition, however, courts have held that the independent contractor is entitled to the same immunities as the owner or occupier." *Id.*

## II. Analysis

{¶ 55} I will address appellant's three assignments of error together while conducting a de novo review of the entire record under Civ.R. 56. While I generally concur with the majority's review of the facts, a closer examination of them is appropriate to deciding the assignments of error.

{¶ 56} To support their initial evidentiary burden under Civ.R. 56(C) for its motion for summary judgment, both Kroger and Dotson point to the depositions of appellant, with exhibits, filed in the record to show that there is no genuine issue as to any material fact that either Kroger or Dotson owed appellant a duty due to the open-and-obvious nature of the hazard.

22.

**{¶ 57}** Appellant admits, as a nearby resident, he was a frequent user of that specific Kroger store and was aware from at least five of those prior visits that the store was being renovated "all over." The renovations included the vestibule area, which included relocating the shopping cart corral from the left-side to the right-side as you enter through the automatic doors from the outside. The day appellant fell, November 21, 2018, was a clear-weather day. It was daylight. He walked into the vestibule from the parking lot without difficulty raising his feet as needed, i.e., without "shuffling" his feet. Due to an ATV accident 14 years earlier, appellant walked with "baby steps." Appellant did not use a cane or walker. Once in the vestibule, there was no lighting problem, and he had no vision problems. Appellant was in no hurry.

> Q: You were able to see then into the vestibule?
> A: Yes.
> Q: At that point were you looking straight ahead?
> A: Yes.
> Q: Were you looking at where you were going to be walking?
> A: Yes.
> Q: Did you look down at the ground where you were going to be walking?
> A: No.
> Q: As you walked into the store that day you said it was well lit, correct?
> A: Yes.
> Q: And nothing obstructing your vision?
> A: No.

**{¶ 58}** We know the physical layout of the vestibule and of the hazard from photos taken after the incident. Appellant admitted that a particular exhibit photo, taken hours later by one of his sons, most closely depicting the vestibule area at the time of his fall. The photo depicted a portion of a large black-and-white carpet that is tacked down to the

23.

concrete floor and adjacent to cream-colored tile in the corral area where the shopping carts are kept. The color contrast is distinct.

> Q: Well, then you can't dispute the fact that there was [cream] colored tile, black tape, a wood block and two different colors of carpet right near that area where you fell on the bump?
> . . .
> A: It's -- there is a color difference.
> Q: Right. And that would have been exposed and free for you to see if you looked, correct?
> A: Yes, but that's where I had to walk, I had to walk out this way and that's when I went over the carpet, I didn't pay attention to where she was standing, I just know she was standing right there in that area.
> Q: Okay. Was she -- you didn't testify that she was in front of that block though, did you?
> A: I didn't say she -- she was standing right in that general area right there, so I had to go out that way to go around her.
> Q: Okay. Did she block your view of that? Of the piece of the exposed [wood]?
> A: Yeah. I would say yes.
> Q: How?
> A: What do you mean, how? I'm not looking at the floor.

{¶ 59} Between the black-and-white carpet and the cream-colored tile are visible parts of plywood boards, taped down to the tile with black duct tape. Again, the color contrast is distinct. In the photo, a rug is covering most of, but not all of the plywood and the black duct tape lengthwise. Even if the rug had been moved between the time he tripped over it and his son took the picture, appellant admitted that the rug was not long enough to cover the full length of the plywood.

> Q: But you would still agree . . . that that rug does not appear long enough to cover that entire area, does it?
> A: It doesn't look like it would cover it.

{¶ 60} Upon entering the vestibule, appellant intended to get a grocery cart housed to the right, along the wall separating the vestibule and the store. Just inside the automatic

24.

doors a Kroger employee was working to collect return bags, blocking his straight line to the carts, so appellant walked around her. The employee was not doing anything that distracted appellant or took his attention away from what he was doing, nor did she step back into his way or do anything that caused him to change his pathway, he instead just had to travel more out towards the middle of the carpeting to get around her. There is no indication that appellant, as opposed to any other Kroger patron, was uniquely affected by the presence of the Kroger employee or of the hazard in the vestibule. Appellant guessed he had moved roughly five or six feet into the vestibule before turning to the right to the cart corral, which is when he tripped over something he described as an obstruction hidden under a rug.

{¶ 61} Appellant assumed, but could not specifically recall, he hit something under the rug with the toe of his tennis shoe. He did not recall which foot hit the object. Appellant observed nothing else on the floor that caused him to fall.

> Q: Did you hit it with your right foot, left foot?
> A: I couldn't tell you that, all I remember is hitting it and lunging forward.
> Q: Did you hit it with the toe of your shoe?
> A: I would say so.
> Q: Do you remember specifically hitting it with the toe of your shoe?
> A: I couldn't tell you, I don't remember that.

{¶ 62} Appellant did not know what exactly he hit, did not recall whether he had fully fallen to the floor, did "not really know if he even looked back" at the area, did not look under the rug after his fall to see what the obstruction was, and was unable to say whether the rug moved when he stumbled. After appellant fell over the "bump," he could

25.

see it and admitted that he would have seen the "bump" and known it was there if he had looked when entering the store.

> Q: Well, you said you saw -- you saw -- let me ask you this, what parts did you see when you looked back?
> A: To tell you the truth, I don't really know if I even looked back, I got up and I yelled at her and I said, you got to do something about that bump.
> Q: Could you see the bump from where you were on the ground?
> A: After I fell over it, I could see it.

{¶ 63} After appellant saw the pictures his son took of the hazard in the vestibule, he then determined that he hit wood hidden under the rug. Based on his personal knowledge of construction materials, he estimated the wood was "at least a half inch thicker than the finished floor." Appellant agreed the "bump" was something that could have been seen prior to and after his fall and denied that anything prevented him from looking.

> Q: And could you have seen that from a couple of feet on the other side before you fell?
> A: If I was looking for a bump, I mean, you assume when you walk into a store that there's nothing there, I mean, the floor should be level.
> Q: Sure. But could you have seen that bump if you would have looked?
> A: If I would have looked, yes, probably.

{¶ 64} Appellant explained that he had been focusing on walking around the employee in the vestibule, and not paying attention to the rug on the floor.

> Q: If you had looked prior to your fall you would have seen the bump, just like you saw it after your fall?
> MR. BRUNO: Objection. Go ahead and answer.
> A: I probably could have if I would have, you know, if I would have looked.
> Q: Okay. And was there anything preventing you from looking?

26.

> A: No, I was just looking towards, you know, walking around the lady looking towards the carts, I wasn't looking at the floor.

After appellant fell forward, he got up himself, and yelled at the Kroger employee that "they needed to do something about it."

> Q: After you fell you said you got up and yelled at the employee that they needed to do something about the floor, right?
> A: Correct.
> Q: Did she say anything to you?
> A: No, she just looked at me.
> Q: Do you know whether she actually saw you fall?
> A: Well, she was right there, she probably had to have seen me fall.
> Q: That wasn't my question. Did she say or do anything that made it clear to you that she had seen you fall?
> A: No.

{¶ 65} Although appellant was "hyped up" and "mad" about the situation, he proceeded into the store to complete his shopping trip, which involved walking around the entire store. Another of appellant's sons, who drove appellant to the store but remained in the parking lot, did not witness the trip-and-fall. His son eventually caught up with appellant in the produce department.

> Q: Did you describe for [your son] exactly what caused you to fall?
> A: I told him I tripped over something and I fell and that's all I told him, I didn't know, I didn't know what it was at the time, alls I -- alls I know when I -after I fell and I got up that there was a bump there.

{¶ 66} After appellant finished shopping throughout the Kroger store, appellant's son drove appellant home and unloaded the groceries at appellant's home. The son then drove appellant to the Glass Pavilion of the Toledo Museum of Art, and they walked around the exhibits for "a period of time." Appellant first sought medical attention for his injuries five days after his November 21, 2018 trip-and-fall.

27.

{¶ 67} Dotson's superintendent of the construction work at the Kroger store admitted in his deposition that on the day of the incident Dotson was the general contractor overseeing the work in the vestibule done by a subcontractor. The vestibule work involved "tearing up" the front entrance and installing a new grocery cart corral. No one from Dotson was present at the time of appellant's fall, as they typically worked on the project at night between 9:00 pm and 7:00 am. If work remained to be done at the end of the shift, Dotson was responsible to ensure patrons were warned about things on the ground. To prevent tripping hazards, Dotson always uses on the floor 5/8-inch plywood "strips" of the same size and thickness, flush with the tile, cutting angles to flatten them out, then throwing a rug on top so there would be just a minor transition in height elevation. Dotson had not been contacted by anyone to say that something had happened in the vestibule after appellant's fall.

{¶ 68} I disagree with the majority that the open-and-obvious doctrine does not apply in this matter. Upon de novo review I find that appellees met their burden of establishing the absence of a genuine issue of material fact on the essential elements of appellant's slip-and-fall negligence claims against appellees regarding their duty of ordinary care to maintain the store vestibule area in a reasonably safe condition such that patrons are not unreasonably exposed to danger because under the open-and-obvious doctrine no duty exists where appellant admits he was not distracted and could have seen in plain view the partially-covered plywood if he had looked. Appellant admitted he had not actually paid attention to the floor or the rug on his way to the carts.

28.

{¶ 69} Appellees having met their initial burdens, the burden shifted to appellant to set forth specific facts showing that there is a genuine issue of material fact for trial. Appellant points to the "clear" existence of attendant circumstances because the rug was carelessly tossed on top of the uneven floor to mask danger and divert his attention away from it. Appellant does not point to any evidence in the record of the careless manner prior to the incident of Dotson placing the rug on top of the flattened plywood, and his own photographic evidence of the scene was not taken contemporaneous to his fall, and he could not testify whether or how the rug had been disturbed since he fell.

{¶ 70} Appellant disputes using his deposition statements as admissions because they "were isolated statements and did not constitute an admission that the hazard was open and obvious. . . . When reviewing Appellant's entire testimony, it is apparent that Appellant merely asserted that there was a possibility he could have observed the defect before falling, but only after he observed it from a lower vantage point." I disagree that the distinction appellant makes is a genuine issue of material fact.

{¶ 71} Appellant does not dispute the hazard of the partially-covered plywood was in plain view, does not point to any appellee-caused distraction to prevent him from viewing the hazard, and admits the hazard caused the floor to be uneven the insignificant amount of up to one-half inch, which is well below the "two-inch doctrine." Appellant was able to complete his storewide shopping after his trip-and-fall, followed by a walking excursion at the local art museum. Appellant does not point to any evidence that any other reasonable person, other than himself, who patronized the Kroger store that day was prevented from seeing the hazard. He only proffers speculation of a unidentifiable,

29.

unreachable woman who he says he heard from a third party, either his son or his son's girlfriend, allegedly had a problem with the same hazard.

> Q: But you cleared [the Kroger employee] and were able to see where the rug was, right?
> A:Well, I went around her and I walked towards the carts, I wasn't paying attention to the rug on the floor.
> . . .
> Q: And you already told me you're just estimating the size of the bump, but it was something you could see both before and after your fall?
> A: Yeah, just knowing construction and stuff like that, apparently that board is at least a half inch thicker than the finished floor. . . . I didn't measure it and I don't think – I don't know if you guys saw it, if you had the boards, I have no idea, I mean, and I don't know how long after this picture was taken [by appellant's son] the floor was finished.
> Q: Okay. Other than the lady that's depicted in 12, [Exhibit] A-12, do you know of anyone else who had problems with this area where you fell?
> A: Probably multiple people, I would think.
> MR. BRUNO: Do you know?
> THE WITNESS: No, I don't know.
> . . .
> Q: And the lady that you said fell in 12, did you ever get her name?
> A: No.
> Q: Okay. And is all we can do to identify her is look at what her legs and feet are?
> A: Pretty much, yes.
> Q: Okay. And when you said she fell, did she fall on the ground?
> A: I have no idea, I wasn't there.

{¶ 72} With respect to a Dotson-caused distraction by the placement of the rug to prevent him from viewing the hazard, appellant relies on speculation to conclude that the so-called "bump" hazard caused his fall because he admits he was not looking where he walked and did not see the "bump" until after he fell. Even after the fall appellant did not investigate the "bump" to determine anything further about it.

> Q: Did you have a chance to look under there at the time that you fell?

30.

A: No, I -- I just got up and yelled at her and said they needed to do something about that and went inside.

{¶ 73} Appellant admits the "bump" was raised up one-half inch from the floor, but offers no evidence of attendant circumstances to help a fact-finder determine if that one-half inch "bump" was unreasonable or significant. Appellant self-declares that everything about the hazard was unreasonable, but even the photographic evidence he relies on in the record indicates the hazard was open-and-obvious to all patrons.

{¶ 74} Upon entering the vestibule, appellant intended to get one of the grocery carts housed to the right, along the wall separating the vestibule and the store. Just inside the automatic doors a Kroger employee was working to collect return bags, blocking a straight line to the carts, so appellant walked around her before traveling to the grocery carts on the right. The employee was not doing anything that distracted appellant or took his attention away from what he was doing, nor did she step back into his way or do anything that caused him to change his pathway. Rather, appellant just had to travel more out towards the middle of the carpeting to get around the employee. Appellant guessed he had moved roughly five or six feet into the vestibule before turning to the right, which is when he tripped over something he described as an obstruction hidden under a rug.

{¶ 75} In my de novo review of the record I found the trial court's January 23, 2024 opinion and judgment entry provided an extensive review of the facts and the appropriate law relevant to the issues raised on appeal. Here, the facts are undisputed appellant was not distracted by an unreasonable circumstance of either appellee's making. Appellant's decision of where and how to approach the shopping cart coral was well within his control,

31.

and had appellant looked, he admitted he would have seen the hazard, which had an elevation of one-half inch, and appellant proffers no evidence of any attendant circumstances which would present a jury question as to whether the hazard might be deemed unreasonable or insubstantial, we are left to apply the "two-inch doctrine" to find that judgment as a matter of law in favor of defendant is appropriate.

{¶ 76} The evidence in the record indicates appellant "simply missed seeing a hazard that was clearly visible until after [he] fell." *Black v. Discount Drug Mart, Inc.*, 2007-Ohio-2027, ¶ 18 (6th Dist.). I do not find appellant met his burden to create any issues of fact that were both genuine and material to establish any exceptions to the application of the open-and-obvious doctrine because there are no factors contributing to appellant's fall beyond his control. *See Noe v. Keller*, 2013-Ohio-2251, ¶ 37 (6th Dist.).

{¶ 77} Appellant's reliance in his first assignment of error on recasting his testimony as an improper probability of noticing the hazard preceding his fall is misplaced, and under Civ.R. 56(C), his sworn deposition testimony is evidence suitable for determining summary judgment.

{¶ 78} Appellant's reliance in his second assignment of error on recasting his deposition testimony that the Kroger-employee-collecting-return-bags in the vestibule was a distraction is also misplaced and contradicts his testimony. Further, appellant's focus on the type of rug, or mat, partially covering the plywood in the vestibule such that he expected the same "mat" experience inside the store is misplaced, as the deposition testimony and photographic evidence in the record specifically addressed the open-and-obvious condition of the vestibule's hazard. Finally, appellant's claim that Dotson's placement of the rug over

32.

the plywood is per se negligence is based on speculation that Dotson's past experience in Kroger store renovations means it knew, or should have known, "their practices like tossing a rug over a potentially hazardous condition to attempt and avoid injury." Again, the deposition testimony and photographic evidence in the record specifically addressed the open-and-obvious condition of the vestibule's hazard.

{¶ 79} Appellant's argument in his third assignment of error that he sufficiently established the Dotson-caused hazard in the vestibule as the cause of his fall relies on speculation and does not show a genuine issue of material fact to defeat summary judgment. As such, both Kroger and Dotson are entitled to the same immunities to appellant's negligence claims. While the duty of ordinary care owed to a business invitee is undisputed, the application in this case of the open-and-obvious doctrine obviates appellees' duty to warn and acts as a complete bar to any negligence claims.

{¶ 80} For the foregoing reasons, I would find appellant's first, second, and third assignments of error not well-taken and would affirm the trial court's judgment.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

33.